WILLIAM A. PIPER *v.* IRA J. TRUE, JOSEPH SWANSON, LAWRENCE M. BROWN, DANIEL F. McCLELLAN, E. B. DUNN, J. R. L. SMITH, FLETCHER M. BISHOP, THOMAS NOTTING-HAM, JOHN HAZZARD, L. J. DUNN, ANTONIO GARRIDO, A. GARRIDO, WILLIAM WELCH, JOHN HUNSACKER, AND THOMAS J. SMITH.

CONSTRUCTION OF CALLS OF DEED.—S. being the owner of a *sobrante* grant, which had been confirmed to her by the Board of Land Commissioners and the United States District Court, and which had been surveyed by direction of the Surveyor General of the United States, which survey was supposed to be final, but had not been confirmed, and might be thereafter set aside and the grant again located by another survey upon different land, conveyed one undivided half to P., and the other to C. and P., by the following description : "One undivided half part of all that certain tract or parcel of land situate, lying, and being in the County of Contra Costa, in the State of California, known as the Rancho Cañada del Hambre y Las Bolsas, being the tract of land upon which the Town of Martinez is situated, and the same confirmed to said S. by decree of the District Court of the United States for the Northern District of California, and surveyed, by the order of the Surveyor General of the United States for California, by A. W. Von Schmidt, Deputy Surveyor, in March, 1860, and approved by said Surveyor General; the said tract, according to said survey, containing thirteen thousand three hundred and twelve and seventy one-hundredths acres of land, saving and excepting therefrom the piece of land now occupied and inclosed by the parties of the first part, and also the adobe house built by them, now occupied by one Lathrop, and a convenient lot of land adjacent to said adobe house, and upon which the same stands ; the whole, however, including the said tract now occu-pied and inclosed, as aforesaid, or so much thereof as may be necessary, not exceeding the area of twenty-five acres of land." Afterwards a new survey was made and confirmed by the District Court, which located the grant upon almost entirely different land, and did not include the Town of Martinez nor the land reserved in said deed. The question was, whether the title of S. to the grant as finally surveyed had passed; *Held*, that it had passed.

IDEM.—Where general descriptions are followed by particular descriptions in a

deed, the latter will not restrict the former, if they have been used in the sense of reiteration or affirmation.

IDEM.—The rule that, in the construction of deeds, facts and events which have transpired since the deeds were executed cannot be considered, does not exclude events which at the time of the execution of the deeds the parties knew might happen.

IDEM.—If a deed contains different descriptions, one of which applies to land which the grantor owned and the other to land which he did not own, the former shall be taken as true and the latter as false.

IDEM.—Where the ambiguity in a deed is latent, testimony as to the facts and circumstances surrounding the parties and the subject matter at the time the deed was executed, is relevant.

IDEM.—All doubts as to the meaning of a deed must be solved in favor of the grantee.

APPEAL from the District Court, Fifteenth Judicial District, Contra Costa County.

This was an action brought to recover possession of certain lands in Contra Costa County. The plaintiff deraigned title to the demanded premises under the deeds which are discussed in the opinion of the Court. The defense was, in effect, that the demanded premises were not embraced in said deeds. The case was tried before the Court with a jury. The plaintiff had verdict and judgment against certain of said defendants, while the defendants whose names are enumerated at the close of the opinion of the Court had verdict and judgment, and as to them the plaintiff moved for a new trial, which was denied, and appealed from the judgment in their favor and from the order denying a new trial.

At the trial, the defendants who are respondents offered to show that the land embraced in the survey of Von Schmidt, made by the Surveyor General of the United States for California, mentioned in the two deeds from Desiderio Briones and his wife, Teodora Soto, did not include the lands in controversy in this action; that the land known at the date of said deeds, in the year 1860, as the Rancho Cañada del Hambre y las Bolsas was other and different land from that described in the complaint; and also offered in evidence a duly certified copy of the plat of survey, and

of the survey of Von Schmidt referred to in said deeds, and to follow up said offer by showing that no part of the land in controversy was embraced in the Von Schmidt survey, and that the land on which the Town of Martinez is situated is no part of the land sued for, and that the twenty-five acres reserved in the deeds forms a part of the location of said Town of Martinez, and that the land on which the said town is situated is other and different land from that described in the complaint.

The Court below overruled the defendants' several offers, to which they excepted, and insisted, on the hearing of said motion for new trial, that the Court erred in excluding such evidence. The Court below denied said motion, on the ground that said evidence had been improperly excluded.

The other facts are stated in the opinion of the Court.

*Williams & Thompson,* and *Thomas A. Brown,* for Appellant.

This case shows that the survey which went into the patent is different from the Von Schmidt survey; and the patent survey having been judicially approved and confirmed, is conclusive evidence that the Von Schmidt survey was set aside and annulled as an incorrect survey of the Rancho Cañada del Hambre, etc. (*Bernal* v. *Lynch, ante* 135.)

The end and object of the construction of every instrument is to find out the intention of the parties, (*Ferris* v. *Coover,* 10 Cal. 628; *Kimball* v. *Semple,* 25 Cal. 449–456,) and the rules adopted in the construction of instruments are those which will best enable the Courts to ascertain that intention. (10 Cal. 628.) Now, we say that on the first contemplation of the circumstances under which the deeds in question were made, it is manifest that Teodora Soto intended to sell, and Piper and Crockett and Page intended to buy, the Rancho Cañada del Hambre y las Bolsas, and all title, legal and equitable, to it. In fact, the Rancho Cañada del Hambre, etc., is all that is conveyed. The other portions

of the description merely assert that it is the same tract of land as the rancho before mentioned. Unless the grantors intended to sell the rancho, we must assume that the one party intended to sell and the other to buy land which the grantors did not own, and to which they could convey no title. The opinion or conjecture manifested by certain calls of the deed, that the tract covered was the same on which the Town of Martinez was situated, and that it was surveyed by Von Schmidt in March, 1860, was an erroneous opinion, and nothing more.

The general words of description, "the tract of land known as the Rancho Cañada del Hambre y las Bolsas," are sufficient to pass the land. (*Castro* v. *Gill*, 5 Cal. 42; *Stanly* v. *Green*, 12 Cal. 162.)

The particular recitals, if any, cannot be held on any principle of interpretation to be restrictions or limitations. That in relation to the survey, is nothing more than an explanation that it is deemed to be the same land surveyed as that which is comprised in the Rancho Cañada del Hambre y las Bolsas. It would not be interpreting the deed, but inserting a clause in it which it did not contain, to hold that the language relating to the survey restricted the conveyance to the land embraced in the plat of the Von Schmidt survey.

We contend that upon the application of the rule, *falsa demonstratio non nocet, cum de corpore constat,* this question must be resolved in favor of appellant. The word "false," in the rule *falsa demonstratio,* has been held to include things false, mistaken, or inapplicable. (*Roe* v. *Trarmarr*, 2 Smith's Lead. Cases, 517, 6th Am. Ed.; *Johnson* v. *Simpson*, 36 N. H. 95; *Harvey* v. *Mitchell*, 11 Foster, 375; *Peck* v. *Mallams*, 10 N. Y. 509; *Anderson* v. *Baughman*, 7 Mich. 69; *Sawyer* v. *Kendall*, 10 Cush. 241.)

The rule must be held to include false or mistaken inferences or suppositions, as well as positive statements of matters as facts which are untrue or mistaken. The circum-

77

stances both of law and fact surrounding the parties must all be taken into consideration; for contracts must be presumed to be entered into with relation to the laws that govern them, in reference to their subject matters, and should be so construed as to carry into effect the views and intention of the parties. (*Hill* v. *Martin,* 12 Martin, 177.)

We refer to the following authorities illustrating the rule *falsa demonstratio non nocet,* etc.; *Bosworth* v. *Danzien,* 25 Cal. 298; *Reed* v. *Spicer,* 27 Cal. 63; *Reamer* v. *Nesmith,* 34 Cal. 624; *Jackson* v. *Clark,* 7 Johns. 223; *Jackson* v. *Loomis,* 18 Johns. 84; *Worthington* v. *Hylycr,* 4 Tyng's Mass. 196; *Doe ex dem. Connolly* v. *Vernon,* 5 East. 51; *Hall* v. *Gittings,* 2 H. & J., Md., 119; *Hawkins* v. *Hanson,* 1 Har. & McH. 523; *Loomis* v. *Jackson,* 19 Johns. 449; *Johnson* v. *Simpson,* 36 N. H. 93; *Jackson* v. *Marsh,* 6 Cow. 283; *Lush* v. *Druse,* 4 Wend. 318; *Pike* v. *Monroe,* 36 Maine, 309; *Jackson* v. *Root,* 18 Johns. 60; *Peck* v. *Mallams,* 10 N. Y. 509; *Proctor* v. *Pool,* 4 Dev. 370; *Belk* v. *Love,* 1 Dev. & Bat. 65; 2 Washburn's Real Property, 628; *Ferris* v. *Coover,* 10 Cal. 628; *Hathaway* v. *Power,* 6 Hill, 453; *Wendell* v. *The People,* 8 Wend. 189; *Moore* v. *Griffin,* 22 Maine, 354; *Swift* v. *Eyers,* Cro. Car. 546; *Stukely* v. *Butler,* Hobart, 168; *Cutler* v. *Tufts,* 3 Pick. 278; *Bratton* v. *Clawson,* 3 Strob. Law. 130; *Howell* v. *Saule,* 5 Mason, 410; *Reddick* v. *Leggett,* 3 Murph. 543; *Norwood* v. *Byrd,* 1 Rich. 135; *Fallwood* v. *Graham,* 1 Rich. 497; *Boardman* v. *Reed,* 6 Pet. 328; *Goodtitle* v. *Southern,* 1 Maule & S. 299; *Doe* v. *Galloway,* 1 Barn. & Adol. 43; *Miller* v. *Fickthorn,* 31 Penn. St. 257; *Seaman* v. *Hogeboom,* 21 Barb., S. C., 407; *Stanly* v. *Green,* 12 Cal. 162; *Castro* v. *Gill,* 5 Cal. 42; *Bruck* v. *Tucker,* 32 Cal. 429; 1 Greenleaf's Ev., Secs. 287, 301.

If there be words repugnant and plainly at variance with the general intention of the instrument, they shall be rejected. (*Ela* v. *Card,* 2 N. H. 175; *Crowley* v. *Swindles,* Vaughan, 173; *Sims* v. *Doughty,* 5 Vesey, 43; *Furnival* v. *Combes,* 5 Man. & Gr. 736; *Crosby* v. *Bradbury,* 2 Appleton, 61; *Thatcher* v. *Howland,* 2 Metcalf, 41; *Sheppard* v.

*Simpson,* 1 Devereux, 237; *Mayo* v. *Blount,* 1 Iredell, 283; *Field* v. *Huston,* 8 Shepley, 69; *Gibson* v. *Bogy,* 28 Missouri, 478; *Emerson* v. *White,* 9 Foster, 482.)

*Campbell, Fox & Campbell,* and *H. Mills,* for Respondents.

By the deeds in question the plaintiff's grantors do not sell the Rancho Cañada del Hambre y las Bolsas, and then stop; but they sell the half of that certain parcel of land known as the Cañada del Hambre y las Bolsas. What land had that name at that date? That covered by the Von Schmidt survey. They did not convey the land which might eventually be located by the Government as that rancho, but the land then known as that rancho.

The Court erred in rejecting respondents' proffered testimony. There is on these deeds no patent ambiguity. For all that appears therein, every demonstration may point to the same land. But when it appeared in proof that the land in the patent is not that on which Martinez is situated, it showed a latent ambiguity, and opened the whole case to explanation. 2 Parsons on Cont. 558–560; 3 Dane Dig. 362; *Doe* v. *Vallejo,* 29 Cal. 301; 1 Metcalf, 381; 32 N. Y. 99.)

For this error the respondents could have rightfully demanded a new trial. (*Kimball* v. *Semple,* 25 Cal. 449.) The Court will place itself in the same condition as the parties, and their intent will be ascertained in the same manner as in the case of any other contract. And from this standpoint, we say that the particularity with which the parties to the deeds specify the land then known by the name; the minute description by the metes and bounds of the survey of Von Schmidt, which are in effect incorporated in the deeds; the unmistakable monument of the Town of Martinez; the exception of other land on which the grantors lived, and the addition that all these are the same land confirmed to Soto, unmistakably indicate that the parties believe that the land so defined was the land confirmed, and did not deem it worth while to make any provision for a change. and, *in fact, made*

*none.* The deed is to be construed by what they said in it, and by the light of surrounding circumstances. These circumstances say that they *did not* intend to provide for a change of location.

We admit that they could have provided for a change; we say that if they had done so, and the grantors had entered on the land at the date of the deeds supposed to be the true premises, it would not have prevented them from following the new location. But we say, as the parties to these deeds made no such provision, the Courts cannot now make it for them.

It is, therefore, from the understanding of the parties *then* entertained that the question is to be decided, and not from what afterwards took place. The land is to be located as the parties, by going on the ground at the time of the making of the deed, would have located it. ( *Van Wyke* v. *Wright,* 18 Wend. 161; *Jackson* v. *Clark,* 7 Johns. 223.)

But it is objected that the grantors did not own the land in the Von Schmidt survey. They did own a part of it, equal to several hundred acres, and they owned the land on which they lived. Under such circumstances, the fact that they did not own all or even the greater portion of the land within the survey, furnishes no ground for the rejection of this call of the deeds. (*Jackson* v. *Wilkinson,* 17 Johns. 146; *Davis* v. *Rainsford,* 17 Mass. 211; 25 Cal. 122; 4 Wheat. 444; 30 Cal. 539; 8 Wend. 183; 24 Cal. 436–444.) Land may be described by reference to a deed or map, and if the map differ from the courses named in the deed, the map governs the location. (*Reed* v. *Spicer,* 27 Cal. 57; *Doe* v. *Galloway,* 5 Barn. & Adol. 43; *Doe* v. *Bowen,* 3 Barn. & Adol. 453.) So, in this case, the Von Schmidt survey must, to all intents, have an equal controlling weight in interpreting the calls of the deeds under which appellant deraigns title.

By the Court, SANDERSON, J. :

This case turns upon the construction of the deed from Teodora Soto and Desiderio Briones, her husband, to the plaintiff, and the deed from the same parties to J. B. Crockett and Lucy B. Page. The question is whether the deeds embrace the lands in controversy, or relate to other lands not in suit. The description in the deed to the plaintiff is as follows: "One undivided half part of all that certain tract or parcel of land situate, lying and being in the County of Contra Costa, in the State of California, known as the 'Rancho Cañada del Hambre y las Bolsas,' being the tract of land upon which the Town of Martinez is situated, and the same confirmed to said Teodora Soto by decree of the District Court of the United States for the Northern District of California, and surveyed by order of the Surveyor General of the United States for California, by A. W. Von Schmidt, Deputy Surveyor, in March, 1860, and approved by said Surveyor General; the said tract, according to said survey, containing thirteen thousand three hundred and twelve and seventy one-hundreths acres of land; saving and excepting therefrom the piece of land now occupied and inclosed by the parties of the first part, and also the adobe house built by them, now occupied by one Lathrop, and a convenient lot of land adjacent to said adobe house, and upon which the same stands, the whole, however, including the said tract now occupied and inclosed as aforesaid, or so much thereof as may be necessary, not to exceed the area of twenty-five acres of land."

The language of the deed to Crockett and Page is substantially the same, omitting the reservation of twenty-five acres.

The case shows that the "Rancho Cañada del Hambre y las Bolsas" was granted as a *sobrante* to Teodora Soto by Juan B. Alvarado, then Governor of California, on the 14th of December, 1841—the grant to consist of so much of the tract of land known, at the date of said grant, as the

"Cañada del Hambre," as should remain as *overplus* from the ranchos of Pinole and Welch, not exceeding three square leagues. This grant was confirmed to Teodora Soto by the Board of Land Commissioners on the 15th day of May, 1855, and the confirmation was affirmed by the United States District Court on the 16th day of April, 1857. The Attorney General of the United States having given notice that no appeal would be prosecuted, the District Court of the United States, on the 11th of August, 1857, decreed that Teodora Soto have leave to proceed under its former decree as under final decree. In March, 1860, by order of the Surveyor General of the United States for California, a survey of the grant was made by his deputy, Von Schmidt, and approved by the former. In May, 1860, the two deeds in question were made. On the 25th day of July, 1866, the matter of survey came before the District Court of the United States, and a survey embracing almost entirely other land than that embraced in the Von Schmidt survey was confirmed by the Court. The lands in controversy are within the survey as confirmed on the 25th of July, 1866, but are not within the Von Schmidt survey. Whether any action was ever taken by the Court upon the Von Schmidt survey, and if so, what, does not appear except inferentially. From the fact that a different survey embracing almost entirely different land was finally confirmed, it is evident that the Von Schmidt survey was not considered correct.

In the foregoing statement of the facts, in view of which the question of construction is to be determined, we have included not only the facts which were disclosed by the plaintiff's testimony, but also the facts which the defendants offered to prove, but were not allowed to prove by reason of the ruling of the Court that they were not admissible. In its ruling the Court erred, technically speaking, for the testimony offered by the defendants was pertinent to the question of construction, and should, therefore, have been received. The ambiguity, if such it was, was latent, and for the purpose of its solution, all the facts and circumstances by

which the parties and the subject matter were surrounded were relevant and pertinent. (*Reamer* v. *Nesmith*, 34 Cal. 624; *Saunders* v. *Clark*, 29 Cal. 304.) But the error does not entitle the defendants to a new trial, unless the facts which they offered to prove would have the effect, when proved, to change the construction of the deed which was declared at the trial.

There are in all five calls, aside from the State and county, four of which are common to both deeds, the fifth being found only in the deed to the plaintiff. They are as follows: first—the tract of land known as the Rancho Cañada del Hambre y las Bolsas; second—the tract of land on which the Town of Martinez is situated; third—the tract of land confirmed to Teodora Soto by decree of the District Court of the United States; fourth—the tract of land surveyed by Von Schmidt, by order of the Surveyor General, in March, 1860, and approved by the latter, containing thirteen thousand three hundred and twelve and seventy one-hundredths acres; fifth—the tract of land upon which the reservation described in the deed to plaintiff is situated.

Of these calls, the second, fourth, and fifth do not describe the land in controversy; but this cannot be affirmed of the first and third. The first, considered by the light of the surrounding circumstances, does not indicate or describe a specific tract of land, but a *sobrante* or overplus not yet segregated. As already suggested, for the purpose of ascertaining what land the parties intended, the one to sell and the other to buy, we must assume their places in respect to time and circumstances. The time was May, 1860; the circumstances such as have been detailed. The vendor had a Mexican grant, not to any specific tract of land, but to the overplus of a tract called the Cañada del Hambre y las Bolsas, which tract had been confirmed to her by the United States, but had not been finally segregated from the land of which it was a part. True, a survey had been made by the proper officer, but it was well known to both parties that the survey was not final, and might be set aside or disregarded

by the District Court of the United States, and a different survey made and finally confirmed, as was, in fact, subsequently done. Under these circumstances, the name *Rancho* Cañada del Hambre y las Bolsas could not have suggested to the minds of the contracting parties anything else than the thing which it, in fact, had previously and still represented, an unlocated or floating grant. So of the third call, "the tract of land confirmed to Teodora Soto by the decree of the District Court of the United States." From the nature of the case, this call could not have referred to the land described in the second, fourth, and fifth calls, or any other specific land, for no specific land had been confirmed. What was the tract of land which had been confirmed by the decree of the District Court? Certainly not the land on which Martinez was situated, nor the land which had been surveyed by Von Schmidt, but a tract not yet located or specified, but floating within exterior lines containing a much larger quantity, and which might or might not be located according to the Von Schmidt survey. It is unreasonable to suppose that calls of the character of the first and third, which, under the circumstances, as we have seen, could mean nothing else than the unlocated or floating grant of which Teodora Soto was the owner, would have been used at all, had the land included in the Von Schmidt survey been intended, and nothing else. Had Teodora Soto intended to sell her grant only in the event that it should be finally located according to the Von Schmidt survey, it is not reasonable to suppose that she would have used other calls, not only not needed for the purposes of demonstration, but calculated to defeat her real by indicating a different intent. If she did not intend to sell her grant, regardless of its location, why refer to it by name? Why speak of it as having been confirmed by the District Court? She could have had no sensible motive in doing so, except to point out the grant, regardless of its true location, as the subject matter of her contract; for by doing so she added nothing to the certainty of the description of the land included in the Von Schmidt survey. The fact that

she did so shows that her mind was not fixed solely upon the land included in the Von Schmidt survey, but upon her grant known as the *Rancho* Cañada del Hambre y las Bolsas, which had been confirmed to her, but not finally located; that it was her *rancho* which she had in mind, and which she intended to sell. In view of all the circumstances, we think there could be no well grounded doubt but that she intended to sell her grant, and not any specific land; but concede it to be doubtful, the language of the deed must be taken as hers, and all doubts must be solved against her. ( *Vance* v. *Fore*, 24 Cal. 435; *Muller* v. *Boggs*, 25 Cal. 175.)

The conclusion which we have reached is in full harmony, in our judgment, with the technical rules of construction. It is argued, on the part of the defendants, that the first and third calls are general, while the other calls are particular, and operate as a restriction or limitation upon the former. It is very doubtful whether any of the calls can be considered as particular. The metes and bounds of the Von Schmidt survey are not given, nor is the survey referred to for the purpose of making it a part of the deed; all that is said being, that a survey has been made. So of the other calls. It is doubtful if they can be classed as particular descriptions; but concede, for the sake of the argument, that the first and third are general, and the second, fourth, and fifth are particular, we are of the opinion that the latter have not been used in the sense of restriction, but in the sense of reiteration or affirmation.

It is further argued, on the part of the defendants, that we must place ourselves in the position of the parties at the time the deeds were made, and locate the lands as the parties themselves, then going upon the lands with the deeds in their hands, would have located them, without regard to what may have subsequently transpired. Of the soundness of the general rule that facts subsequently developed, *unknown* to the parties at the time the conveyance was made, cannot be taken into account upon questions of this character, there

can be no doubt. ( *Van Wyck* v. *Wright,* 18 Wend. 157.) The reason is obvious. Being ignorant of such facts, the parties could not have contracted with any reference to them, and their intentions can in no respect be illustrated by them. But the rule is not applicable to this case, for the ground upon which it rests is wanting. The facts which subsequently transpired, and which we are asked to disregard, are the survey made in 1866 and its confirmation by the District Court. Ignorance on the part of the parties of that survey and its confirmation cannot be affirmed, in the sense of the rule in question. While they did not know that such a survey would be made and confirmed, they knew that the Von Schmidt survey had not been confirmed—that it might be set aside and another made and confirmed, by which the rancho might be located upon different land, in whole or in part; which amounts to the same thing. The argument begs the question, for it assumes that the second survey was a fact of subsequent development. *Eo nomine* it was, but the second survey, notwithstanding, merely represented, under a different name, a fact which existed at the date of the deeds, and which was well known to the parties—the fact that the land to be conveyed had not been finally located, and might or might not turn out to be the land which had been surveyed by Von Schmidt.

It is further contended, on the part of the defendants, that all the calls apply to the land described in the Von Schmidt survey; that that land was known as the Rancho Cañada del Hambre y las Bolsas, and as the land confirmed to Teodora Soto, at the time the deeds were made; all of which they offered to prove. All this, from the nature of the case, can mean nothing more than that after the Von Schmidt survey was made the lands surveyed by him went by the name of the Rancho Cañada del Hambre y las Bolsas. If such was the case, it cannot alter the result, for the fact (which is the pivot of the question) that the land then going by that name might not be the land to which that name in truth and in fact belonged, was none the less well known to the contract-

ing parties, a fact which cannot be ignored or overcome by any process of reasoning founded upon the other facts of the case. The fact that Teodora Soto had only a floating grant to sell; that it had been confirmed only, and not segregated; that she described it by its proper name and by the fact of confirmation, which fact, at the date of the deeds, could have no application to any land except that upon which her floating grant might finally settle, and could illustrate no intent on her part except to sell her floating grant, are in no respect weakened by the fact that she *supposed* the Von Schmidt survey was correct. All parties, doubtless, so *supposed*, but they also knew that it might not be correct, and contracted in view of such knowledge.

The fact that the subject matter was a floating grant, distinguishes this from all the cases upon the question of construction to which our attention has been called. Those cases deal only with specific or segregated lands, and illustrate the rules of construction where there are general and particular, true and false descriptions. They are, therefore, but remotely analagous, and afford but little aid in solving the question presented by the record in this case. The cases which approach more nearly in their facts and circumstances are those where the land is described by number or name, and also by metes and bounds, and the grantor owns lands answering to the one and not to the other. In such cases, the description which applies to the land which he owned will be adopted as the true one, and the other discarded as false. Of this rule, *Lush* v. *Druse,* 4 Wend. 313, is an example. That was the case of a lease of a lot by its number, followed by a description by metes and bounds, which included lands which the lessor never owned, and the description by metes and bounds was rejected, and the one by number taken as the true description. Under this rule, the "Town of Martinez," the "Von Schmidt survey," and the "reservation of twenty-five acres," which designate land which Teodora Soto never owned, must be rejected, and the "Rancho Cañada del Hambre y las Bolsas" and "the land

confirmed by the District Court of the United States," which sufficiently designate land which she did own, must be taken as the true description.

The order denying the plaintiff's motion for a new trial, as against the defendants Hazzard, Hunsacker, Welch, L. J. Dunn, Antonio Garrido, Antonia Garrido, and Thomas J. Smith, is reversed, and a new trial granted.

Mr. Justice CROCKETT, being disqualified, took no part in the decision.