Argued April 24, decided May 20, rehearing denied July 8, 1913.

# MAYS *v.* MORRELL.

## (132 Pac. 714.)

**Reformation of Instruments—Error Running Through Several Instruments.**

1.   Where by mutual mistake an erroneous description extends through a series of deeds and a suit resulting in a judicial sale, so that the property intended to be affected is not described, a court of equity, having before it all the parties interested, may correct the error, and establish the individuals involved in their rights as they would have been but for the mistake, without going through all its ramifications and making the corrections as of the beginning of the error.

> [As to causes and proceedings in general for the reformation of instruments, see notes in 65 Am. St. Rep. 481; as to reformation on the ground of mistake, see note in 117 Am. St. Rep. 227.]

**Equity—Multifariousness—Misjoinder of Causes of Action—Relief Sought.**

2.   Where an injunction sought the cancellation of a judgment and a lien thereunder, quieting plaintiff's title to land, and the implied reformation of former decrees are all mere incidents to the general purpose of a suit to bestow the title to the land where it was the intention of all it should rest, a mistake in description having extended through a series of deeds and litigation, the complaint is not subject to the objection of stating more than one cause of action, and misjoining them.

**Equity—Limitation of Actions.**

3.   The statute of limitations does not control suits in equity with the same strictness as it does actions at law.

**Equity—Laches.**

4.   The matter of a suit being stale depends on the circumstances of each case.

**Equity—Laches—Parties in Pari Delicto.**

5.   The claim of defendants on land being as stale under the circumstances as that of plaintiff seeking a correction of error through mistake in description, so that they are *in pari delicto,* neither can claim an advantage over the other in that respect.

> [The rule of *pari delicto* is the subject of a note in 113 Am. St. Rep. 724.]

**Estoppel—Pleadings—Position in Judicial Proceeding.**

6.   Where M., owning two tracts of land, and intending to convey them, gave a deed, the description of which was defective, so that it covered only one of them, and O., a judgment creditor of M., brought a suit to set it aside as fraudulent and subject the land to

his judgment, his complaint not only using the erroneous description of the deed, but alleging the deed included all of M.'s land, and the suit, in which the court found that deed did include all M.'s land, resulted in a decree holding the deed to be a mortgage, and a judicial sale at which plaintiff was the purchaser, followed by a sheriff's deed, using the erroneous description, plaintiff's title under the judicial sale will amount to a deed from O., describing the land as all that owned by M., with the result that O. cannot thereafter, as against plaintiff, subject to his judgment against M. the land which by misdescription M. failed to include in his deed.

From Multnomah: WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by F. P. Mays against Otto Morrell, Joseph Miller, E. B. Watson, J. R. Stoddard, Nellie Dayton, administratrix substituted, Edward Mendenhall, Charles F. Lord and W. A. Story, sheriff of Multnomah County, Oregon.

A summary of the voluminous complaint in this suit is here given: On November 9, 1892, the defendant Miller shot the defendant Morrell, and on December 15th next following the grand jury of Multnomah County returned three indictments against Miller for offenses connected with the shooting. Upon one of them he was adjudged guilty and sentenced to imprisonment in the penitentiary for 10 years, in April, 1893, and the State of Oregon had judgment against him for $519.05 as costs and disbursements. At the time of and prior to the shooting all the real property Miller owned consisted of two adjacent 10-acre parcels, separately described by metes and bounds with reference to section corners established by government survey, but in fact constituting but one tract, together with an easement for right of way, all in Multnomah County. To compensate his attorneys, whom he engaged to defend him in the criminal and civil litigation connected with the injury of Morrell, Miller, between November 18 and December 9, 1892, conveyed to some, and mortgaged to others, of them, what all intended to be the

whole of his real property, but by mistake, owing to an erroneous interchange of the words "north" and "south," one of the parcels was so wrongly bounded as to make it appear to be in another county. The plaintiff here, by deed from Miller's grantees, by the same description, succeeded to their title on December 16, 1892, and at once entered into possession of all the land Miller actually owned, and has ever since then kept and still maintains that possession, claiming to be the exclusive owner of the land. In a civil action begun December 10, 1892, Morrell recovered judgment against Miller on May 3, 1893, for $10,000 as damages and $36.50 as costs and disbursements. Morrell's attorneys, who are among the defendants here, gave notice on April 18, 1894, of their lien upon that judgment for their agreed remuneration. About May 20, 1893, Morrell began suit against Miller and all his mortgagees and grantees and their grantee, the plaintiff here, and a subsequent mortgagee of the latter, as well as against the State of Oregon to set aside all of Miller's alienations of his real property and to subject it to the payment of the judgment of $10,000 and costs above mentioned. As a ground of this, it was alleged that Miller had made the mortgages and conveyances with intent to hinder, delay and defraud Morrell in the collection of his claim for damages, in which purpose his grantees and their successors in interest had knowingly participated. In his complaint in that suit Morrell used the same erroneous description of the Miller land employed by the latter in his deeds and mortgages, but also alleged that the conveyances sought to be overturned included all of Miller's real property. Miller's grantees and their successors in interest, the plaintiff here, resisted that suit, and it was finally determined, in substance, that Miller's conveyances were not fraudulent, but, owing to the inadequacy of consideration when compared

with the real value of the land, they should be considered mortgages to secure the reasonable demands of Miller's grantees against him. A decree was therefore entered adjusting the amount and priorities of the claims of the several parties, and directing a sale of the realty in satisfaction of the same. The court found that all of Miller's real property was included in his deeds and mortgages of the same, and so treated this throughout the litigation until the final decree, sale and confirmation, but always using in detail the erroneous description already noted. Mays, the plaintiff here, bought the land at the judicial sale, and the proceeds thereof were applied all as directed by the decree; the defendants here participated in the distribution. No redemption was attempted, and in due time Mays received a sheriff's deed. The mistake in the metes and bounds description of one of the parcels was not discovered until April, 1903, when Morrell issued execution on his original judgment at law against Miller for $10,000 and costs, and levied it upon the misdescribed parcel by a true detailed description. At this juncture Mays began this suit, alleging with great particularity the history of all the events hereinbefore noted, and prayed, in substance, that the threatened sale be enjoined, that the Morrell judgment and the attorneys' liens be canceled so far as they appear to affect the Miller land, and that plaintiff here be decreed to be the owner thereof by the true description and his title quieted; or, in the alternative, if the court should deem that relief impossible, that the decree in Morrell's suit to set aside Miller's conveyances be reformed so as to correct the mistake in the description, and that upon Morrell and his attorneys repaying what they had received from the judicial sale, plaintiff be restored to his priority over them as decreed in their suit, and a resale of the premises

ordered. The defendants demurred to this complaint on the following grounds: "(1) That several causes of suit have been improperly united in said amended complaint, as follows: (a) For perpetual injunction against the sale of the real property described therein on execution upon the judgment therein named; (b) for canceling the lien of said judgment on said real property, and the execution issued on said judgment and levied thereon; (c) for establishing the plaintiff's title to said premises, quieting the same; (d) for the reformation of the decrees of the Circuit and Supreme Courts of the State of Oregon, therein alleged and described, and a resale of said real property. (2) Said cause of suit for the reformation of said decrees of the Circuit and Supreme Courts of the State of Oregon, or either of them, accrued more than 10 years before said amended complaint was filed, and is barred by the provisions of Section 392 of Ballinger's and Cotton's Annotated Codes and Statutes of Oregon. (3) Said cause of suit for the reformation of said decrees, or either of them, is stale, and barred by the laches of the plaintiff. (4) Said amended complaint does not state facts sufficient to constitute any cause of suit against said defendants, or any of them." The Circuit Court sustained the demurrer, dismissed the suit, and the plaintiff appeals.

REVERSED.

For appellant there was a brief over the names of *Messrs. Carey & Kerr* and *Mr. Omar C. Spencer,* with an oral argument by *Mr. Charles H. Carey.*

For respondents there was a brief over the names of *Mr. Edward B. Watson, Mr. Ephraim B. Seabrook* and *Mr. Dan J. Malarkey,* with oral arguments by *Mr. Watson* and *Mr. Seabrook.*

Mr. JUSTICE BURNETT delivered the opinion of the court.

1. Taught by the maxim that equity regards the substance rather than the form, we discern that the sole purpose in general of the suit at bar is to secure for the plaintiff the land which it is alleged was the intention and understanding of all parties at the time should pass to him by the proceedings described, and which did inure to him in fact except as affected by the mutual mistake of the parties in the litigant transaction. It matters not where the mistake originated, or how often it is reiterated; all those who innocently repeat it make it their own. Neither is it of any concern at what stage of its progress the mistake is arrested and its consequences averted. If it is the mutual mistake of the parties then involved, equity has power to do justice between them according to their own real intentions, notwithstanding the fact that the error, if it had been discovered, might have been obviated earlier in its history. Where, as in this case, the chancery tribunal has before it all the parties interested, it may correct the error and establish the individuals involved in their rights as they would have been but for the mistake, without going back through all its ramifications and making corrections as of the beginning of the error.

2. In the matter of there being two causes of suit stated in the complaint, the fallacy of the position of the defendants, in which the alternative prayer of the bill imputes to the plaintiff at least the color of participation, lies in the assumption that if it could have been discovered when the deed was made, the error must be corrected as of that time or not at all. It is not so much a matter of unraveling the doings of the parties back to the happening of the original error and there exterminating it as it is of relieving them

of the consequences when it is afterward discovered. The situation here is analogous to that in *White* v. *Proebstel, ante,* p. 11 (130 Pac. 732), where the court sustained the relief of present owners against consequences of a mistake made by their predecessors in title. The injunction desired the cancellation of the Morrell judgment and the attorneys' claim of lien thereunder, quieting plaintiff's title to the premises involved, and the implied reformation of the former decrees are all mere incidents to the general purpose of the suit to bestow the title to the land where it was the intention of all it should finally rest. We think, therefore, that the objection to the complaint on the ground of misjoinder of causes of suit is not well taken.

3–5. The objections urged by the demurrer, to the effect that the cause of suit is stale, and that it is barred by the statute of limitations, may be considered together. The statute of limitations does not control suits in equity with the same strictness as it does actions at law, and the matter of a suit being stale depends upon the circumstances of each case. So far as that is concerned, the claim of the defendants upon the land is quite as stale under the circumstances as that of the plaintiff. In a certain sense each is *in pari delicto,* and neither can claim advantage over the other in that respect.

6. On the main question a practical view of the situation is that both plaintiff and his associates on the one hand and the defendants on the other were endeavoring to obtain all the land belonging to Miller. Under the mortgages and conveyances mentioned those concerned with the plaintiff were apparently leading in the race, and had in fact obtained possession. If Morrell, without commencing his suit in equity, had levied his execution upon the tract of land omitted by reason of the error from the deeds and mortgages, his position would have been impregnable, for there is no

question that the Miller deeds failed to describe one of
the 10-acre parcels which he actually owned, and it
is not stated that the conveyances described the prem-
ises as all the land he owned. Unfortunately for him,
however, Morrell in his complaint in the equity suit
supplied the deficiency, and therein described the land
involved as being all the land which Miller owned. The
very essence of the contention in that suit was that
Miller had conveyed the whole of his landed posses-
sions. A deed describing real property in such words
is sufficient to convey the title of all the land owned
by the grantor.

As said by Mr. Justice MOORE in *Guillaume* v. *K. S.
D. Land Co.*, 48 Or. 400, 406 (86 Pac. 883, 885): "The
rule is quite general that if the description clause of
real property, as stated in a written instrument, is
vague, the construction of the language used that has
been placed upon it by the parties may be shown by
parol evidence as tending to identify the premises in-
tended. * * Thus, when possession of real property
is taken pursuant to an agreement of the vendor, the
occupation of the premises by the vendee may render
certain what otherwise would have been a vague de-
scription of the land intended by the parties."

Again, as said by Mr. Chief Justice WATSON in *Rich-
ards* v. *Snider,* 11 Or. 197, 199 (3 Pac. 177, 179):

"The intention of the parties to the agreement to
contract with reference to this particular tract and no
other is equally certain. There is no uncertainty as
to this intention on the face of the written agreement.
It is clearly a case admitting of the identification of
the subject of the contract by proof of extrinsic facts.
* * And the facts admissible and effectual for this pur-
pose, which are alleged in the complaint, and admitted
by the demurrer, seem ample. The possession alone,
taken under the circumstances alleged, and in view of

the stipulation for possession in the written agreement itself, should be held a sufficient identification.''

In *McCulloch* v. *Price*, 14 Mont. 320 (36 Pac. 194, 43 Am. St. Rep. 637), it was held that ''A conveyance of all the lands, tenements, hereditaments, appurtenances of every description belonging to the grantors, or either of them, or in which they have, or either of them has, any interest, wherever such property, or any part thereof, may be situate, is not void for want of description, and transfers their title to any and all lands in which they have any interest.''

In *Pettigrew* v. *Dobbelaar*, 63 Cal. 396, a description was sustained which said: ''All lands and real estate belonging to the said party of the first part wherever the same may be situated together,'' etc.

In *Harvey* v. *Edens*, 69 Tex. 420 (6 S. W. 306), it was decided that ''It is no objection to the certainty of description * * that it does not specifically describe each item of property conveyed. If it purports to convey all the property of the partnership firm making it, and that of each individual member thereof, wherever situate, it becomes a matter of evidence as to what particular property the partnership and each individual member thereof owned when the assignment was executed.''

The same doctrine is approved in *Corvallis & E. R. Co.* v. *Benson*, 61 Or. 359 (121 Pac. 418, 425), where other authorities are cited and reviewed. The same principle applies to Morrell's designation of the land in question in his complaint in equity, where he states that Miller had conveyed all his land to the grantors of the plaintiff here.

The gist of Morrell's effort in his equity suit was to bring about a certain disposition of all Miller's land thus described. In other words, he sought to effect an alienation of Miller's holdings by matter of record, so to speak. He compelled the plaintiff here and his pred-

ecessors in title to come into the court in whose territorial jurisdiction the realty was situated and participate in that alienation. Throughout that proceeding he describes the land as all the land Miller owned, and without so describing it he could not well have maintained his suit, because he would have had a remedy at law by his execution, levied on property not included in the conveyance from Miller. A transfer of Miller's title was accomplished in a manner by that suit in equity Morrell initiated. The decree, sale and confirmation constitute a muniment of title in favor of the purchaser at that judicial sale. It avails Morrell nothing that part of the property was inaccurately described in detail. When it is plain what was meant by all the parties was the land in question, especially where it is illustrated by the grantee going into possession and remaining there, claiming title to all of the property, the false description of the holding will be rejected in favor of that which truly represents the real intention of the parties.

In *Lodge's Lessee* v. *Lee,* 6 Cranch, 237 (3 L. Ed. 210), it is said: "A grant of an island by name in the Potomac River, superadding the courses and distances of the lines thereof, which on resurvey are now found to exclude part of the island, will pass the whole island."

In *Keith* v. *Reynolds,* 3 Me. (3 Greenl.) 393, the court declared that: "Where a parcel of land is conveyed as being the whole of a certain farm, which is afterward described in the deed by courses and distances which do not include the whole farm, so much of this description will be rejected as that the whole may pass."

*Drew* v. *Drew,* 28 N. H. 489, is an authority saying that "A devise of 'all my homestead farm in D., being the same farm whereon I now live, and the same which was devised to me by my honored father,' will pass

the whole of the homestead farm, though it appears that a part of it was not devised by the father.''

So, also, in *Piper* v. *True,* 36 Cal. 606, the principle is enunciated thus: ''If a deed contains different descriptions, one of which applies to lands which the grantor owns, and the other to lands which he did not own, the former shall be taken as true and the latter as false.''

Likewise in *Reed* v. *Spicer,* 27 Cal. 57, it is said that: ''If a deed recites two descriptions of the property conveyed, one of which sufficiently identifies the property, while the other is false in fact, the false description should be rejected as surplusage.''

The suit in equity instituted by Morrell, culminating in the judicial sale and conveyance under which the plaintiff here claims, substantially describes the property as all the property Miller owned, and although there was injected into the record the description of property which Miller did not own, it does not vitiate the effect of the proceeding to which Morrell was a party, and which operated to convey the whole of what was actually owned by Miller. Having thus brought about a conveyance of all Miller's property, the hand of Morrell should be stayed in his subsequent attack upon the same property.

There was error in sustaining the demurrer to the complaint, and the decree of the Circuit Court is reversed.                                    Reversed.