Argued October 18, affirmed December 19, 1956

# KELLY *v.* TRACY

305 P. 2d 411

*William B. Murray,* of Portland, argued the cause for appellant. With him on the brief was Donald R. Stark, of Portland.

*Samuel M. Bowe,* of Grants Pass, argued the cause and filed a brief for respondent.

Before WARNER, Chief Justice, and ROSSMAN, BRAND and PERRY, Justices.

BRAND, J.

This is a suit to impress a trust on certain shares of corporate stock held by defendant Doris F. Tracy. From a decree for the plaintiff, George Kelly, defendant appeals.

The complaint, filed on 4 June 1953, alleges that prior to 18 June 1947 plaintiff and defendant were each the owner of an equal interest in a partnership business undertaking, comprising an undivided one-half interest in a business known as Deer Lodge, in

Josephine County, Oregon; that on or about 18 June 1947, defendant for herself and as attorney in fact for plaintiff, sold the total interest of both parties in said business to Deer Lodge, Inc., and received as compensation 200 shares of capital stock in the corporation, which was to be divided between the parties in accordance with their interests in the business conveyed; that the certificates were issued to defendant in her sole name, and plaintiff is the owner of and entitled to the transfer of 100 shares; that plaintiff has on several occasions demanded that defendant transfer to him 100 shares of the stock, which she has refused and still refuses to do. The prayer is that plaintiff be adjudged the owner of one-half of the stock held by defendant, and that defendant be declared trustee of plaintiff for the stock, and be directed to cause the stock to be transferred to plaintiff. The answer admits that plaintiff and defendant were owners of equal interests in the partnership business known as Deer Lodge and that together they owned one-half of that business. It admits the alleged demand upon and refusal by defendant to transfer the 100 shares to plaintiff and denies all other allegations of the complaint. Defendant asserts that ''plaintiff seeks to enforce in equity a stale claim which is several years old'' and that the claim is barred by laches. Other alleged defenses have been abandoned. The reply is a general denial.

The cause proceeded to trial and on 28 July 1954 a decree was entered that plaintiff was the owner of 100 shares of the capital stock of Deer Lodge, Inc., and that defendant was trustee thereof for the use and benefit of plaintiff. Defendant was ordered to deliver 100 shares of said capital stock to plaintiff and cause it to be transferred in the name of the plaintiff on

the corporate books. On 6 August 1954 defendant filed a motion for a new trial which was denied.

On 1 November 1946 plaintiff and defendant, then husband and wife, and Myrtle and C. L. Tapp, husband and wife, all as vendees, entered into a contract with Reynold MacDonald and wife as vendors, for the purchase of MacDonald's Lodge, which became Deer Lodge. The venture on the part of the four vendees was to be a partnership with the couples to share on a 50-50 basis. Business commenced this same month, but in December 1946 domestic difficulties developed between the plaintiff and defendant and in March 1947 they came to an agreement that plaintiff would return to California and obtain work and that defendant would remain with the Tapps and continue to conduct the business until such time as it could be sold, at which time plaintiff would receive his share of the proceeds. We quote from the plaintiff's testimony:

"Q Had the four of you made an agreement to dispose of the property?

"A That was it. Anything we got we were going to split between the four of us."

. Shortly after plaintiff arrived in California, defendant wrote to him, in part, as follows:

"I have just come from an attorney's office after having talked to you on the phone and he has advised me that due to the urgency of the situation it would be better for you to give me a Power of Attorney instead of a Deed. In that way any changes that may come up I will be able to sign the necessary papers. So I am enclosing the forms of Power of Attorney covering only this property here at the Lodge. Please rush them back to me immediately as I have had a knock down and drag-out fight with the Tapps over their percentage of share in the business. * * * Now, Jac as I told

you over the phone and in my letters I will do every-
thing I can to save our investment and divide with
you 50-50 after all bills are paid, but I will have
to have this power of attorney so I can act on a
moments notice. * * *"

Plaintiff executed this power and returned it to de-
fendant on 23 May 1947 and thereafter received no
communication for a considerable period regarding the
partnership affairs, although he made several inquiries.
The power of attorney was revoked in 1949.

On 10 June the defendant Doris Tracy (then Kelly)
and two others as incorporators, secured the issuance
of a charter for Deer Lodge, Inc., an Oregon corpo-
ration having an authorized capital stock of 300 shares.
Doris Kelly subscribed for 200 and the Tapps for 100
shares. At the organization meeting on 18 June 1947
Doris Kelly was elected secretary, and, she, acting for
herself and as attorney in fact for the plaintiff, con-
veyed to Deer Lodge, Inc. all of their right, title and
interest in the MacDonald contract and in all of the
real and personal property of the partnership. The
Tapps joined in the conveyances so that the partner-
ship was divested of all of its assets and those assets
were transferred to the corporation organized by de-
fendant and in which she was the principal stockholder.
The evidence showed that plaintiff and defendant had
owned equal shares in the partnership and that to-
gether they certainly owned at least one-half of the
partnership assets. The agreed distribution of stock
in the corporation would indicate that at the time of
incorporation the plaintiff and defendant were recog-
nized as owners of two-thirds of the partnership assets,
for defendant took 200 and the Tapps 100 shares.

On issuance of the capital stock the defendant re-
tained the 200 shares without notifying plaintiff of the

transaction. Plaintiff first learned that a corporation had been organized, that the partnership property had been transferred to it, and that defendant had received 200 shares of stock representing the former partnership interest of plaintiff and defendant, upon reading a letter written by defendant's attorney dated 5 January 1948. Thus the plaintiff's interest in the partnership property constituted the payment for 100 shares of stock in the corporation which was issued to defendant. Plaintiff made several demands for his share of the stock before bringing suit. A divorce, or purported divorce, was obtained by defendant in Idaho on 6 September 1947.

A preliminary question is presented by plaintiff's motion to dismiss the appeal on the ground that the case has become moot "in that the Appellant has recognized the validity of the decree of the lower court by expressly recognizing the effectiveness of said decree and permitting Plaintiff to have and enjoy the benefits thereof." The undertaking on appeal recites the order of the trial court requiring the defendant to transfer 100 shares of stock to the name of the plaintiff on the books of the corporation and to deliver the stock to plaintiff. It then recites that the defendant has executed a transfer of the shares as ordered by the decree and "said certificate of stock for one hundred shares issued to the said George Kelly, plaintiff, is herewith deposited with the Clerk of the above-entitled Court * * * to abide the Decree of the Appellate Court herein in accordance with Section 19-040 O.R.S.;".

The motion to dismiss the appeal is supported by the affidavit of one Reynold MacDonald, which states that he was the authorized agent of the plaintiff and had a written proxy authorizing him to vote all shares

of stock owned by the plaintiff. It is further stated that the cause was tried in January 1954 and that he attended the annual stockholders meeting in January 1955, the defendant being present as secretary of the corporation; that at that time a list of eligible voters was circulated by the defendant as secretary; that he was recognized as entitled to vote 100 shares as proxy for the plaintiff and did vote such shares. A similar statement is made with reference to the voting of plaintiff's shares by Don Eva as proxy for plaintiff at the annual meeting of the corporation in January 1956. The affidavit of MacDonald concludes thus:

> "That at no time subsequent to the trial of the above case has the Defendant refused to recognize the voting rights of the Plaintiff with respect to said one hundred (100) shares of stock."

■ A party may waive the right to appeal by acquiescence in or recognition of the validity of a judgment or decree rendered against him through acts inconsistent with his position on appeal. *Ehrman v. Astoria Railway Co.*, 26 Or 377, 38 P 306; *Moores v. Moores,* 36 Or 261, 59 P 327; *Elwert v. Marley,* 53 Or 591, 99 P 887, 101 P 671; *Kellogg v. Smith,* 70 Or 449, 142 P 330; *Lange v. Devlin,* 80 Or 238, 156 P 260; *Duniway v. Cellers-Murton Co.,* 92 Or 113, 170 P 298, 179 P 561; *Fluhrer v. Bramel,* 158 Or 694, 72 P2d 47, 73 P2d 265, 77 P2d 824; *Lewis v. Shook,* 182 Or 483, 188 P2d 148; 4 C.J.S. 396, Appeal and Error, § 212. In this case, however, the defendant deposited the stock certificates in court in compliance with ORS 19.040(2), which provides:

> "When the decree appealed from requires the execution of a conveyance or other instrument, execution of the decree is not stayed by the appeal, unless the instrument is executed and deposited with

the clerk within the time allowed to file the undertaking, to abide the decree of the appellate court.''

■ Compliance with ORS 19.040(2) for the purpose of obtaining a stay of execution on appeal cannot be considered acquiescence in the decree. The general rule regarding the voting of corporate shares may be stated as follows:

"In the absence of statute or agreement, the right to vote stock as between the corporation and the person endeavoring to vote it follows the legal title. For this purpose the legal title is deemed to be in him who is the owner as disclosed by the record books of the corporation. * * *'' 13 Am Jur 528, Corporations, § 490.

■ Plaintiff as record holder of the shares was entitled to vote them, and defendant, in her capacity as secretary, was not in a position to deny this right, and did not by allowing it, waive her rights on appeal. It therefore follows that the motion of plaintiff to dismiss the appeal should be and is hereby denied.

■■ Defendant's first contention is that plaintiff's complaint does not state facts sufficient to constitute a cause of suit. First of all, we take note of the fact that no demurrer to the complaint was ever filed in the court below. On 9 December 1954 defendant did file in this court what purported to be a general demurrer to the complaint, but such unusual procedure was of no avail. It was stricken by order of this court. In the absence of any demurrer challenging the sufficiency of the complaint in the trial court, that instrument must be liberally construed, and especially after verdict, is entitled to all intendments in its favor. *Tauscher v. Doernbecher Mfg. Co.*, 153 Or 152, 56 P2d 318; *Keegan v. Lenzie*, 171 Or 194, 135 P2d 717; *Sullivan v. Carpenter*, 184 Or 485, 199 P2d 655; *Med-*

*ford v. Pacific National Fire Ins. Co.,* 189 Or 617, 219 P2d 142, 222 P2d 407; *Nicholson v. Jones,* 194 Or 406, 242 P2d 582.

 Defendant asserts that "Plaintiff alleges in his complaint in substance that plaintiff and defendant are equal partners * * *." The complaint contains no such allegations. The allegation is that prior to the 18th day of June 1947 they *were* partners. In support of her demurrer defendant claims that there is no allegation that the partnership had been dissolved and that therefore it would be presumed to continue, and from this she concludes that the stock is partnership property. Defendant confuses rules of pleading with a rule of evidence. The question here is the sufficiency of the complaint, and the rule that a thing once proved to exist is presumed to continue as long as is usual with things of that nature is a rule of evidence and not of pleading, and such presumption cannot usurp the place of an averment. *Sargent v. Waterbury,* 83 Or 159, 161 P 443, 163 P 416. The essence of defendant's contention is that no relief can be given to the plaintiff unless and until a suit for accounting is brought. In this the defendant errs. Limiting ourselves for the moment to the question of pleading, we find it alleged that defendant acting for herself, and for plaintiff under the power of attorney, sold the total interest of the plaintiff and defendant in the partnership business to a third party, Deer Lodge, Inc., a corporation. This action of hers caused the dissolution of the partnership as a matter of law. *Marx v. Goodnough,* 16 Or 26 at 31; *Eilers Music House v. Reine,* 65 Or 598, 133 P 788; 40 Am Jur 299, Partnership, § 244.

*Burke Machinery Co. v. Copenhagen,* 138 Or 314,

6 P2d 886, which is cited by defendant, was dealing with presumptions as means of proof, not of pleading.

The other partners, the Tapps, who were associated with plaintiff and defendant in the enterprise before the sale, are not named in the complaint, but it does appear that there were other partners who owned an undivided half interest in the business. The complaint shows a dissolution of the partnership, and we may add that the evidence also shows the same fact, because it appears that all of the partnership assets of all four of the partners was sold to the corporation. *Simpson v. Shadwell,* 264 Ill App 480; *Seufert v. Gille,* 230 Mo 453, 131 SW 102; *Schneider v. Schneider,* 347 Mo 102, 146 SW2d 584; *Lubbock Grain & Coal Co. v. Ferguson,* Tex Civ, 227 SW 539; *Brand v. Erisman,* 172 F2d 28; *Monteleone v. Airey,* 57 So2d 257; 40 Am Jur 299, Partnership, § 243; 68 CJS 851, Partnership, § 344.

*Altman v. Altman,* 67 NYS2d 119, cited by defendant, is not in point.

■ The complaint now challenged for the first time must be held good. In effect, it alleges that by an act which dissolved the partnership, the defendant, as attorney in fact for the plaintiff, sold his one-fourth share of the partnership assets to a corporation and received therefor 100 shares of stock which in equity belongs to the plaintiff. Whether the partners owed some debts and whether an accounting might be necessary is immaterial in this case. Defendant relies upon ORS 68.130(1) which provides:

> "All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership is partnership property."

But the partnership as a going concern was defunct

and without assets, and the stock was not acquired on account of the partnership but was acquired and is held by defendant. In her brief the defendant takes inconsistent positions. On the one hand she claims that the stock was a partnership asset; on the other she "contends that the agreement was to the effect that plaintiff was to receive ½ of the amount received for the sale of the partnership business after payment of certain outstanding joint debts."

The impediments to relief between partners in actions at law do not exist when the jurisdiction of equity is invoked, and there are numerous instances of suits in equity between partners which do not involve or require a general accounting. 40 Am Jur 450, Partnership, § 461; 40 Am Jur 458 et seq., § 475.

In *McCredie v. McCredie,* 134 Or 517, 294 P 361, defendant claimed that the subject-matter of the suit comprised funds of a partnership, and that the suit could not be maintained until an accounting was had. This court rejected the contention and held that one partner might maintain a suit against another to recover possession of bonds delivered to defendant for safe keeping where the evidence established that defendant held bonds in trust for plaintiff and that such suit was maintainable notwithstanding the fact that no accounting was had between the partners. See also, *Wilson v. Wilson,* 26 Or 251, 38 P 185; *McKee v. Capital Dairies,* 164 Or 1, 6, 99 P2d 1013; *Birkemeier v. Orino,* 168 Or 385, 123 P2d 185; 168 ALR 1088, 1098.

In this case the plaintiff's claim to the stock was based upon his right to possess the indicia of his personal ownership in a corporation which after dissolution was in no way related to the accounting of the defunct partnership.

 Upon the authorities cited we hold that one partner may sue another on a transaction which is isolated from the partnership business. Here plaintiff attempts to impress a trust upon stock, the interest in which is individual, which he may properly do in such a suit, without bringing suit for an accounting to settle the partnership affairs. Plaintiff's complaint is not defective in this regard.

Defendant's third assignment of error is as follows:

"The court erred in decreeing ownership of 200 shares of stock in Deer Lodge, Inc. in the plaintiff and decreeing the defendant trustee for the use and benefit of the plaintiff of the said stock."

We will now consider the evidence on that issue.

Plaintiff and defendant were husband and wife and remained such until 6 September 1947, which was subsequent to the incorporation of Deer Lodge, Inc. and the dissolution of the partnership. As such wife she wrote the letter asking plaintiff to execute a power of attorney. She promised, "I will do everything I can to save our investment and divide with you 50-50 after all bills are paid".

Defendant contends that plaintiff and defendant entered into a *contract* to share the proceeds of the sale, but only after all the partnership bills had been paid. She bases her claim of such a contract on the letter written by the defendant and the power of attorney executed by plaintiff in response to the letter, and having, as she thinks, established such a contract, she claims that there was no duty to deliver the stock in the corporation until all bills had been paid, and she then claims that there are still outstanding partnership bills. It is true that defendant undertook faithfully to perform her duty as attorney in fact, but we find

no promise on plaintiff's part to make no claim against her until all bills had been paid. He simply gave her the power of attorney for which she asked. Furthermore, when defendant wrote the letter and when plaintiff, in response to her request, executed the power of attorney, it is obvious that the parties contemplated the possibility and even the necessity of a sale of the partnership assets which would result in cash with which to pay the bills, if any. So far as is disclosed by the evidence, no one, not even the defendant, had even considered the possibility of organizing a corporation and transferring to it the partnership assets in exchange for stock at that time.

In December of 1946 defendant's attorney, W. B. Murray, wrote to plaintiff and Mr. and Mrs. Tapp, "We understand that it is proposed to sell the partnership assets for $31,000.00 and to dissolve the same." On 12 March 1947 plaintiff went to California. On 23 May 1947 plaintiff executed the power of attorney. The corporation was formed on 10 June 1947 without any knowledge thereof by plaintiff.

The fact that plaintiff may have anticipated a sale for cash, coupled with a payment of partnership bills from the proceeds, certainly did not amount to a contract that defendant might herself organize a corporation with herself as an incorporator and principal stockholder and the Tapps as the other stockholders, sell the assets to the corporation, and then refuse to deliver plaintiff's certificates of stock until all bills were paid, and continue to hold the stock from June 1947 until June 1953 when plaintiff brought this suit.

In a letter of 5 January 1948 W. B. Murray who now represents the defendant informed plaintiff concerning the organization of the corporation and the

stock issued in exchange for the assets. In that letter he wrote:

> "Inasmuch as you are not a stockholder of Deer Lodge, Inc., the corporation does not recognize any claim of right that you might have to the assets of the corporation as such. The matter of your property rights between you and your former wife do not concern the corporation, but is an individual matter between you and your wife."

This somewhat apocryphal statement certainly did not amount to an unequivocal renunciation by the defendant of her trust obligation to plaintiff. The plaintiff has made no claim that the defendant exceeded her authority in selling to the corporation. He correctly states that "the Plaintiff in suing for the specific shares has in effect ratified the consideration received for the transfer of his interest in the property, and is only asking for delivery of the specific consideration, without reference to any other actions of Defendant." Again, the plaintiff concedes that the complaint does not allege that the defendant wrongfully took title to the stock or intended to defraud plaintiff at that time. The defendant, as a witness, testified:

> "Q You have protected his interest, you say?
> "A Well, I certainly have.

> "Q Mr. Kelly has made demand upon you, has he not, Mrs. Tracy, for the shares of stock in his name, or that are standing in your name, I mean?
> "A I believe he contacted my attorney about it.

> "Q And have you ever transferred any shares of the stock to him?
> "A No.

> "Q Have you refused to do so?
> "A Never have refused to; no.

"Q Have you ever denied Mr. Kelly had any interest in the corporation?

"A No. Never have.

"Q You never have?

"A Never have denied it; no.

"Q Has your attorney denied it for you?

"A I don't know. I don't believe so."

On being shown the letter of January 5, 1948 written by her attorney, the defendant testified:

"Q Did you authorize him to write that letter?

"A I guess I must have."

Apparently the defendant first conceived the idea that she was entitled to claim all the stock at some time after she got her divorce in September 1947. She testified:

"A Well, after my divorce it was my understanding that if I stayed there and took care of the place and worked like I did, doing about three or four people's work taking care of the place and so forth, that the stock should be mine. I didn't ask for any alimony. I paid for my divorce."

■ Defendant's testimony is that it was *her* understanding that the stock *should be* hers. She does not say that plaintiff agreed to anything of the sort, or that it was their common understanding. She may have reached her unilateral understanding from the letter written by her attorney to plaintiff wherein he referred to the proposed divorce suit and stated that defendant was willing to forego any claim for alimony if plaintiff would sign an enclosed quitclaim deed and bill of sale which presumably covered his interest in the Deer Lodge partnership. But plaintiff never signed those instruments. The fact that defendant refrained from asking for alimony did not bind the plaintiff to

give 100 shares of stock to her. We hold that the evidence establishes a resulting trust.

In her brief defendant makes three contentions. The first is that the complaint fails to state a cause of suit. This is entitled "Proposition of Law No. 1". The second is as follows:

"Plaintiff-respondent's complaint does not state facts sufficient to constitute a cause of suit for the reason that it does not allege impediments to an earlier prosecution of plaintiff's claim."

This is entitled "Proposition of Law No. 2".

■ The third contention which we have just considered is that the trial court erred in holding the defendant to be a trustee for the benefit of plaintiff. This is entitled "Assignment of Error No. 3". It is apparent that the first two "Propositions of Law" were intended to serve as assignments of error. Under Proposition of Law No. 2 the defendant argues that "If an equitable suit is brought after the expiration of the time allowed to bring the corresponding action at law, plaintiff must explain the delay in his bill." Defendant argues that the "basis of the complaint * * * is fraud", and then relies upon the provisions of ORS 12.110 in an attempt to establish a two-year limitation on the right to commence the suit. She then contends that the complaint is defective because suit was brought more than two years after the alleged initial fraud and that the delay is not explained in the complaint. Despite the fact that this position is earnestly supported in her opening brief, we need not now consider whether the complaint should have explained the delay in commencing suit, for the reason that the defendant has abandoned the contention. From her reply brief we quote: "The defendant-appellant herewith

abandons its second assignment of error'', which must refer to the matter presented under ''Proposition of Law No. 2''.

Turning now to the evidence on the question of laches, we observe that ORS 12.110 is a limitation on actions, not suits. It imposes a two-year limitation on actions for fraud. Assuming that its purview is extended by ORS 12.040 to suits in equity based on fraud, the fact remains that this case is not based on fraud. Pleading and proof establish a resulting and not a constructive trust.

■ Although defendant now argues that the suit is based on fraud and constructive trust, at the trial her counsel informed the court that he interpreted the pleading to mean that ''plaintiff * * * has asked this court to establish a resulting trust.'' The plaintiff having ratified the sale by the defendant of the partnership assets to a corporation, it hardly lies in the mouth of the defendant on this appeal to assert that the case is based on her own fraud in order to show that the plaintiff was guilty of laches in failing to sue within two years of the original transfer of assets to the corporation.

■ In our opinion ORS 12.110 is inapplicable. Assuming that by analogy some statute of limitations applies to this suit in equity, the period of limitations would be either six or ten years under ORS 12.080 (action for taking or detaining personal property) or ORS 12.140 (action for any cause not otherwise provided for). Bogert, Trusts and Trustees, § 950, p 195, § 952, p 209 and 953, p 219; *Cook v. Elmore*, 27 Wyo 163, 192 P 824.

We are unable to determine from the evidence when, if at all, the defendant unequivocally rejected plaintiff's claim of right to the stock. Until trial below she

never claimed to plaintiff that he was not the equitable owner of the stock, her only claim being that she need not deliver the stock to him until some bills of the partnership had been paid.

■ We have held that the claim of laches is to be decided on the particular circumstances of each case. *Mays v. Morrell,* 65 Or 558, 132 P 714; Bogert, Trusts and Trustees, § 949, p 185.

■ We have held that full knowledge of all the facts concurring with delay for an unreasonable time are essential elements of the defense of laches. *American Surety Co. v. Multnomah County,* 171 Or 287, 138 P2d 597. We have also repeatedly held that the delay in order to amount to laches must be such as works injury to another. *City of Pendleton v. Holman,* 177 Or 532, 164 P2d 434; *McIver v. Norman,* 187 Or 516, 205 P2d 137, 213 P2d 144. Since there was a recognition by the defendant of plaintiff's rights in the stock, the statute of limitations could not be applied by analogy to this suit in equity until there was an unequivocal repudiation of plaintiff's rights by defendant. If there was ever such a repudiation it was not until after defendant secured her divorce. Assuming that the six-year statute applied, the suit was brought within that time. We find no injury to the defendant by reason of plaintiff's delay, either alleged or proven, and conclude that the trial court properly held that the suit was not barred by laches.

The defendant moved for a new trial which was denied. Our statute does not provide for new trials in equity suits and in any event the defendant has waived any objection to the denial of the motion. She has affirmatively asked this court to try the case de novo.

The decree of the circuit court is affirmed.