Argued April 23, dismissed May 26, 1914.

# KELLOGG *v.* SMITH.

(142 Pac. 330.)

**Appeal and Error—Dismissal—Evidence.**

1. Affidavits of both parties on a motion to dismiss an appeal by defendant *held* to show that the defendant used and dealt with property given to him by the decree as his own, and not merely to protect his rights therein as mortgagee.

**Appeal and Error—Dismissal—Grounds—Compliance with Decree.**

2. Where an appellant uses and deals with property awarded to him by the decree of the Circuit Court as his own, and not merely to protect his rights as the holder of a mortgage thereon, the appeal will be dismissed.

From Multnomah: HENRY E. McGINN, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by Eugene Kellogg against W. M. Smith to cancel a deed of real property, a promissory

70 Or.—29

note, and chattel mortgage. The facts are that on August 23, 1912, the defendant W. M. Smith was the owner and in possession at No. 707 Vancouver Avenue, Portland, Oregon, of certain machinery, consisting chiefly of one upright engine, five washing machines, one extractor, three wagons, one auto truck, fixtures and equipments used in and designated as the Albina Wet Wash Laundry, which property he on that day, for the expressed consideration of $5,000, transferred by bill of sale to the plaintiff, Eugene Kellogg. The purchase price mentioned was paid in part by a conveyance of 14.80 acres of land in Yamhill County, Oregon, executed to the defendant August 23, 1912, for the stated consideration of $2,400, by Mrs. Viola Tate, the plaintiff's sister, who then was the owner in fee of the premises. The remainder of the $5,000 was evidenced by the plaintiff's promissory note, executed to the defendant and payable in installments of $100 each, the first maturing October 1, 1912, and the other partial payments monthly thereafter. The negotiable instrument was secured by a chattel mortgage, executed by the plaintiff to the defendant, of the laundry, the fixtures therein, and the equipment thereof.

The complaint charges, in effect, that prior to August 23, 1912, in order to induce the making of the note and the chattel mortgage and the execution of the deed, the defendant falsely represented to the plaintiff that the net income of the laundry was not less than $50 a week; that the property mentioned was free from encumbrance and indebtedness; that the machinery, equipment, etc., were in good order; that the auto truck was in good condition and worth $1,000, and that the operating expenses of the laundry were fully paid; that the plaintiff was unacquainted with such business, but, relying on such

representations, and not knowing anything to the contrary, he was induced to enter into the agreement with the defendant; that the net income of the laundry was not $50 a week, nor did the revenue derived from that business equal the expenses thereof; that many unpaid bills against the laundry were outstanding, and personal property was not free from indebtedness when the transfers were made; that the auto truck was of obsolete make, broken, useless, and not worth the sum stated, and that the engine used in the laundry was not in good working order; that plaintiff took possession of the property and conducted the laundry business until September ——, 1912, when for the first time he learned that such representations were false and made to induce him to execute the instrument mentioned, whereupon he tendered to the defendant the possession of all the property and demanded a reconveyance of the real estate, a cancellation of the promissory note and mortgage, and the payment of $1,000 as damages, but that the defendant wrongfully refused to comply therewith; that by reason of such agreement the plaintiff has sustained losses as follows: To money expended in conducting the laundry $——, to time employed therein $250, to attorneys engaged to maintain this suit $300, and to other damages $250; and that plaintiff has no plain, speedy, or adequate remedy at law.

The answer denied the material averments of the complaint, and for a further defense alleged, in substance, that prior to, and at the time of, the sale of the laundry the plaintiff made a careful examination of all the machinery so employed, and also inspected the books used in the business, thoroughly informing himself as to the amount of money received therefrom and expended therein, which investigation ex-

tended over a period of more than two weeks; that in purchasing the property the plaintiff did not rely upon any representations made by the defendant, but depended upon his own independent examination of the machinery, equipment, and of all the business, etc.; that when the laundry was delivered to the plaintiff it was in good condition, all the machinery in adequate repair and running smoothly; and that the business was paying the defendant a profit—all of which the plaintiff knew.

The reply put in issue the allegations of new matter in the answer, and, the cause having been tried, a decree was rendered denying any damages, but declaring the bill of sale, the promissory note, the chattel mortgage, and the deed to be void, setting them aside and directing the defendant to deliver them into court to be canceled. From this decree the defendant appeals. Appeal Dismissed.

For appellant there was a brief over the names of *Mr. Hayward H. Riddell* and *Mr. H. Daniel,* with an oral argument by *Mr. Riddell.*

For respondent there was a brief over the names of *Mr. Harry Yanckwich* and *Mr. H. J. Parkinson,* with an oral argument by *Mr. Yanckwich.*

Mr. Justice Moore delivered the opinion of the court.

1. A motion has been interposed *in limine* to dismiss the appeal on the ground that the defendant had acquiesced in and complied with the final order of the court herein. It appears from the affidavit of one of plaintiff's counsel that on November 26, 1912, when the decree was given, the laundry was not being operated; that a few days thereafter he was notified by

telephone by one of defendant's attorneys to appear at 707 Vancouver Avenue, at 1:30 o'clock P. M. of the day named to turn over the laundry, machinery, etc.; that pursuant thereto, the plaintiff and affiant, at the time so specified, visited the laundry and found thereat three or four of the workmen waiting for the doors to be opened in order to resume their work; that one of the delivery wagons of the defendant was standing near the building ready for business, and several bundles of washing were then piled in front of the laundry; that affiant demanded a receipt for the property from the defendant, who refused to give one, saying that, if the doors of the building were not opened, he would break the locks, whereupon such fastenings were removed, the possession of the property was delivered to the defendant, who immediately proceeded to put the machinery in motion, then and thereafter operating the laundry, and that in consequence of such conduct he is estopped from asserting that the decree is not fully satisfied.

The counter-affidavit states that when the plaintiff abandoned the laundry he left the machinery and equipment without putting them in proper order; that the tubs, extractor, etc., remained filled with dirty water; that the engine was neither cleaned nor oiled; that all the articles of equipment were left in such a condition that they would very speedily have become unfit for use; that a number of bundles of clothing which had not been washed remained in the building; that plaintiff removed the locks from the doors, and affiant thereupon made arrangements with a person who understood the operation of a laundry to enter the building to put it in order, to wash and properly dispose of the accumulated laundry so left thereat, and to put the machinery in proper condition; that

affiant is not operating the laundry, and the machinery and equipment are now in the building which is owned by him, and that, aside from caring for the machinery, etc., he has not occupied or used the same, which at all times have been subject to the order of the plaintiff; that no part of the promissory note has been paid; and that the chattel mortgage given to secure the negotiable instrument creates a lien upon the personal property mentioned to protect which the affiant undertook, without in any manner accepting or ratifying the decree.

The reply affidavit of Henry F. Paylor is to the effect that he was employed by the plaintiff when the latter closed the laundry October 12, 1912, at which time there was left in the building only a few pieces of clothing, generally denominated "shortage," the owners thereof being unknown, which pieces were hung up to dry; that when the laundry was thus shut down the equipment was put into good condition, the machinery oiled, and no water was left in the tubs or the extractor, nor anything allowed to remain whereby injury could result; that several weeks after the laundry was reopened, subsequent to the granting of decree herein, the affiant entered the building, where he found several persons who had been employed therein idle, who informed him that they were dissatisfied with the man in charge of the business; that there were then many bundles of wet washed laundry which the drivers refused to deliver; that about a month thereafter affiant discovered that the laundry had again been closed, and was informed that the premises had been leased for several months to the Pioneer Wet Wash Laundry, which was not going to operate the business.

Paylor's sworn declarations are corroborated by the reply affidavit of the plaintiff, who states that, with the other property, he also delivered the wagons to the defendant, who thereupon leased the premises to a Mr. Phillips; that such lessee operated the laundry several weeks when he sublet the building, machinery, etc., to the Pioneer Wet Wash Laundry, which, in order to avoid competition, did not do any business in the building so demised.

The reply affidavit of Rex Perkins is, in substance, that he is the owner of the Pioneer Wet Wash Laundry of Portland, Oregon; that about June 14, 1913, he purchased from Mrs. Lillian Phillips the business and good will of the Albina Wet Wash Laundry, at which time he also leased for the term of one year the building, machinery, and equipment from the defendant as the owner thereof, since which time he had not operated that laundry, but held the lease thereof, doing all the washing at the Pioneer Wet Wash Laundry.

The defendant's final affidavit, made April 22, 1914, states generally that by the terms of the chattel mortgage referred to it was provided that, if default were made in the payment of any installment of the prom-issory note thus secured, the whole sum specified should become due and payable; that the first installment of $100 matured October 1, 1912, no part of which has been paid, whereby the conditions of the mortgage were broken; that the plaintiff abandoned the mortgaged property, and upon such breach the affiant took and now holds possession thereof; that he leased the building to Rex Perkins, but the mortgaged property has at all times been subject to redelivery upon the payment of the promissory note; "that said machinery and chattels were not leased to Rex. Perkins

or the Pioneer Wet Wash Laundry, or to anyone else, but said machinery and equipment and all thereof are in my possession."

2. It must be conceded that it was the right and duty of the defendant to protect and preserve the property described in the chattel mortgage, and, if his possession of the machinery, equipments, etc., had been limited to such care, the motion to dismiss the appeal would necessarily be denied. It appears, however, that his management of, and control over, such property extended far beyond its mere protection. The defendant's final affidavit does not controvert the sworn declarations of Rex Perkins to the effect that on June 14, 1913, he leased from Smith, as the owner thereof, the building, machinery, and equipment so mortgaged for the term of one year. It will be kept in mind that such final affidavit states "that said machinery and chattels are not leased to Rex Perkins," etc. The defendant did not state upon oath that the machinery and chattels had not been so demised. It is to be inferred from the careful use of the language employed that after leasing the machinery and equipment to Perkins, as he deposes, the latter surrendered his right to, and interest in, the mortgaged property to the defendant, who then could truthfully depose as set forth in his final affidavit. From an inspection of the affidavits referred to it is apparent that the defendant used and dealt with the mortgaged property as though he then intended freely to accept and accede to the terms of the decree rendered herein, and, such being the case, he will not be permitted now to change the position which he voluntarily assumed, and is estopped from asserting a different attitude: *Culver v. Randle,* 45 Or. 491 (78 Pac. 394), and note collating the preceding cases on this subject; *Roots* v. *Boring*

*Junct. Lum. Co.,* 50 Or. 298 (92 Pac. 811, 94 Pac. 182);
*Oregon Elec. Co.* v. *Terwilliger Land Co.,* 51 Or. 107
(93 Pac. 334, 930); *Thomas* v. *Booth-Kelly Co.,* 52 Or.
534 (97 Pac. 1078, 132 Am. St. Rep. 713); *Elwert* v.
*Marley,* 53 Or. 591 (99 Pac. 887, 101 Pac. 671, 133 Am.
St. Rep. 850); *Eilers Piano House* v. *Pick,* 58 Or. 54
(113 Pac. 54).

It follows that the appeal should be dismissed, and
it is so ordered.                                    Dismissed.