Motion to dismiss appeal allowed October 5; motion to dismiss appeal denied on rehearing November 16, 1937; argued on the merits March 9; affirmed March 29, 1938

## FLUHRER *v.* BRAMEL ET AL.

(72 P. (2d) 47, 73 P. (2d) 265, 77 P. (2d) 824)

In Banc.

*O. G. Larson,* of Portland, for appellant.

*Bischoff & Bischoff,* of Portland, for F. W. Fluhrer.

*B. G. Skulason,* of Portland, for Ray E. Wenger, for respondents.

BEAN, C. J. Respondent moves the court for an order dismissing the appeal, in the above entitled cause, taken by defendant Bramel, insofar as said defendant appeals from the decree in favor of plaintiff, for the reason that said defendant has, since the entry of said decree, acquiesced therein and has acted in affirmance thereof.

■ The decree appealed from rescinded the contract between plaintiff and defendant Bramel, for the sale of a certain service station situated at 8140 S. W. Macadam Ave., Portland, Oregon, thereby adjudicating that the defendant Bramel was the owner of the property, which was the subject matter of the contract of sale, and after the entry of said decree Bramel rented

said property to Wolfer's Automotive Service, Inc., for the term of one year, thereby acquiescing in the decree.

The circuit court also rendered judgment in favor of defendant Wenger and against defendant Bramel for commissions earned by Wenger in bringing about the contract of purchase and sale between Bramel, as seller, and Fluhrer, as purchaser. Defendant Bramel also appealed from the judgment in favor of defendant Wenger. This motion to dismiss has no effect upon the appeal of Bramel from the judgment in favor of defendant Wenger.

The lease of the service station in question from W. E. Bramel to Wolfer's Automotive Service, Inc., is evidenced by written correspondence between those parties. After the execution of the lease, the Wolfer's Automotive Service, Inc., paid the rent of the service station, $35 per month, to Bramel, until June 23, 1937, when notice was given to it that the lease had been assigned to the First National Bank of Portland. Thereafter Wolfer's Automotive Service, Inc., paid the rent to the First National Bank.

Upon plaintiff's attempting to serve the levy and execution upon the service station, as the property of Mr. Bramel, on or about June 16, 1937, Mr. Bramel stated that they would not be able to levy upon the service station or lunchroom because he had leased the service station to Wolfer's Automotive Service, Inc., and the lunchroom to one Charlie Claussen, and that these parties were in possession under the leases and had paid several months' rent in advance.

It is shown by the affidavit of W. E. Bramel that he leased the lot upon which the service station and lunchroom were situated from Joseph Weber, and had

an option to purchase the lot; that after the decree, the plaintiff having surrendered the said property and not supplying any further moneys with which to pay rent to the landlord, it became absolutely necessary for defendant Bramel to make some use of the property to get money with which to keep up the property during the pendency of this litigation, and thereafter he leased portions of said property to various tenants for monthly rentals, as it became necessary. He claimed it was the understanding and agreement with each tenant that possession would be delivered if and when the court should order or decree that possession should be given or that plaintiff was not entitled to rescission. But the writings evidencing the lease by Bramel to the Wolfer's Automotive Service, Inc., do not show any such right reserved.

It is plainly shown that the defendant W. E. Bramel has acquiesced in the decree and treated the property that he had contracted to sell to plaintiff as his own, having improved it by installing a hot-water system and sink and repaired the plumbing, in conformity to the decree.

In *Kellogg v. Smith*, 70 Or. 449 (142 P. 330), after the trial court rendered a decree rescinding the transaction, defendant took possession of the property, a laundry, and operated the same a portion of the time and then leased it to a third party. The defendant attempted to avoid the effect of that lease by contending that he merely placed someone in possession to care for the property pending the appeal, and that he was at all times in a position to surrender the property to the plaintiff, if the appeal should be successful. The court, upon consideration, determined the contention was not made in good faith.

It appears that when Bramel leased the property in question and collected and appropriated the rents, he did so for his own benefit and account, as owner of the property.

In *Elwert v. Marley*, 53 Or. 591 (99 P. 887, 101 P. 671, 133 Am. St. Rep. 850), plaintiff sued for a decree restraining defendant from making use of certain wharfage rights. Defendant claimed the right to the use of the wharf in question. The trial court rendered a decree denying defendant the right to use the wharf and enjoining the use thereof. Defendant appealed from the decree, but subsequent to the entry defendant entered into a lease with plaintiff's grantee of the land in question for the use of said wharf. Thereupon plaintiff moved to dismiss the appeal on the ground that defendant took a lease for the use of the wharf, in effect conceding that he had no right to the use of the same without a lease and hence his conduct constituted an acquiescence in and an affirmance of the decree. This court, in dismissing the appeal, said:

"A party to an action may, by his acts subsequent to a judgment or order against him, waive his right to have such right or order reviewed by an appellate court, as by acquiescing therein by payment or part payment, or by accepting the benefits thereof. Moore v. Floyd, 4 Or. 260; Portland Const. Co. v. O'Neil, 24 Or. 54 (32 Pac. 764)."

In *Lange v. Devlin*, 80 Or. 238 (156 P. 260), it was said:

"The appellant used and dealt with the land as though it then intended fully to accept and accede to the terms of the decree, and it will not be permitted to change the position which it voluntarily assumed. Kellogg v. Smith, 70 Or. 449, 456 (142 Pac. 330), furnishes a conclusive precedent. See, also, Thomas v. Booth-

Kelly Co., 52 Or. 534 (97 Pac. 1078, 132 Am. St. Rep. 713); Elwert v. Marley, 53 Or. 591 (99 Pac. 887, 101 Pac. 671, 133 Am. St. Rep. 850); 3 C. J. 665, 669.

"The appeal is dismissed."

The appeal of defendant W. E. Bramel from that part of the decree in favor of plaintiff F. W. Fluhrer is dismissed.

LUSK, J., took no part in the consideration of this motion.

--------

Motion to dismiss appeal denied on petition for rehearing
November 16, 1937

ON PETITION FOR REHEARING
(73 P. (2d) 265)

BEAN, C. J. On motion of respondent Fluhrer, an order was issued dismissing the appeal in the above entitled cause taken by the defendant Bramel, insofar as said defendant appeals from the decree in favor of plaintiff, for the reason that said defendant has, since the entry of said decree in the lower court, acquiesced therein.

■ The decree appealed from rescinded the contract between plaintiff and defendant Bramel for the sale of a certain service station situated at 8140 S. W. Macadam Avenue, Portland, Oregon, on land which defendant W. E. Bramel held on a lease. The cause was dismissed mainly for the reason that W. E. Bramel had, as it appeared at that time, acquiesced in the decree by leasing the service station to Wolfer's Automotive Service, Inc., after the rendition of the decree appealed from.

Upon a petition for rehearing it is shown that the lease from W. E. Bramel to Wolfer's Automotive Serv-

ice, Inc., was made before the decree of the lower court was rendered in the above entitled case. For this reason the order dismissing the appeal taken by Bramel, insofar as said defendant appeals from the decree in favor of plaintiff, will be set aside.

It is also claimed that Bramel, the appellant, had received rents for a time for the lease of the service station. In view of the fact that the circumstances relating to the service station have a bearing upon the merits of the case, which we do not decide at the present time, the former opinion is reversed and the motion to dismiss the appeal will be denied for the present and the matter will be postponed until the final hearing of the case when the motion to dismiss may be renewed and the whole matter may be presented.

It is so ordered.

LUSK, J., took no part in the consideration of this motion.

————

Argued on the merits March 9 and affirmed March 29, 1938

## ON THE MERITS
### (77 P. (2d) 824)

Department 2.

Appeal from Circuit Court, Multnomah County.

HALL S. LUSK, Judge.

Suit by F. W. Fluhrer against W. E. Bramel and others to rescind a contract whereby plaintiff was to purchase a building. From a decree in favor of plaintiff, and enjoining defendants from paying over the purchase money or delivering plaintiff's note to the named defendant, the named defendant appeals.

AFFIRMED.

*O. G. Larson*, of Portland, for appellant.

*S. J. Bischoff*, of Portland (Bischoff & Bischoff, of Portland, on the brief), for respondent F. W. Fluhrer.

*B. G. Skulason*, of Portland (Skulason & Skulason, of Portland, on the brief), for respondent Ray W. Wenger.

RAND, J. This is a suit for the rescission of a contract for the purchase and sale of a building occupied as a service station and lunchroom and of the fixtures and stock of goods therein. The contract was entered into between the plaintiff and the defendant, W. E. Bramel, on or about June 1, 1936, and, in and by its terms, the plaintiff agreed to buy and the defendant to sell said property for the sum of $5,500. The building stands on premises belonging to one Joseph Weber and these premises are located on Macadam Road just north of the west end of the Sellwood bridge in Multnomah county, Oregon.

On May 10, 1928, Weber demised these premises to one Conway for a term of 10 years for an agreed rental during the time involved in this controversy of $15 per month. Shortly after the making of said lease, Conway, with Weber's consent, assigned the lease for the remainder of the term to the defendant Bramel and he erected said building on the premises and, at the time this controversy arose, was occupying the same as a filling station and lunchroom and claimed to be the owner of the building by virtue of some undisclosed agreement with the landlord.

Desiring to sell the property, Bramel, in May, 1936, employed the defendant Wenger, who was doing business as a broker under the trade name of Fidelity Brokerage Company, and authorized him to contract

for the sale of said property for the sum of $5,500 and, upon his finding a purchaser ready and willing to pay said sum, Bramel agreed to pay Wenger the sum of $500 as commission therefor. Under his said employment, Wenger advertised the property for sale and the plaintiff, who resides in Columbia county, went to Wenger's office in Portland and consulted with him in regard to the property. He then visited the property and talked with Bramel and, at that time, was informed by Bramel that he was holding under a lease which then had but 22 months to run. The plaintiff informed Bramel that he was looking for a location for his son, who was then out of employment, to engage in business and that a lease on the premises for 22 months only would not justify the expenditure of so large a sum for the purchase of the property. Whereupon Bramel informed the plaintiff that, if he would purchase the property for $5,500 and pay $3,000 thereof in cash and execute a promissory note for $2,500, bearing interest at 7 per cent per annum, payable in monthly installments of $50 each plus accrued interest, he could and would procure from Weber an extension of the lease for an additional three years upon the same terms as were provided in the original lease. Plaintiff then returned to Wenger's office and entered into an agreement with Wenger that he would pay Wenger $250 in cash and the additional $2,750 upon Bramel's obtaining from Weber an extension of the lease for a period of three years, and it was agreed between them at that time that Wenger would retain all moneys paid him until Bramel secured the extension and, if he failed to do so, would return the money to the plaintiff. With said understanding, the plaintiff paid Wenger said sum of $250.

On June 9, 1936, Wenger wrote a letter to the plaintiff (plaintiff's exhibit 11), in which he stated, among other things, that:

"Mr. Bramel contacted the landlord and received his consent for a three-year extension on the lease at $15.00 per month. * * * He (Weber) also consented for Mr. Bramel to give a sublease to you on the same conditions."

Relying on the statements contained in said letter, the plaintiff paid Wenger the further sum of $2,750, thereby completing the cash payment which he had contracted to make and, on June 26, 1936, plaintiff executed a note payable to the order of Bramel for the sum of $2,500, bearing interest at the rate of 7 per cent per annum, and payable in monthly installments of $50 each plus accrued interest, as he had agreed to do and deposited the same in escrow with the Bank of Sellwood to be held by said bank in escrow and not to be delivered by the bank to Bramel until the promised extension of the lease for the additional three years had been obtained and deposited in said bank.

It appears from the evidence that Weber declined to grant said extension and that he also refused to permit Bramel to assign said lease to the plaintiff or to sublease the premises to the plaintiff. When the plaintiff ascertained those facts, he brought this suit to rescind the contract and to recover back the moneys which he had paid and the note which he had executed and placed in escrow and joined in said suit, for the purpose of enjoining them from paying over the money or delivering the note to Bramel, Wenger, who was in possession of the money, and the Bank of Sellwood, which was in possession of the note, and obtained an order enjoining them from delivering the same to the defendant Bramel.

Upon the trial of the cause, the lease under which the defendant Bramel was occupying the premises on which the building had been erected was offered and produced in evidence and this lease contains the express provision that:

"Said lessee will not, without the written consent of said lessor being first obtained, voluntarily or involuntarily or directly or indirectly assign or mortgage or pledge this lease or any share or interest therein or permit or allow the same to be assigned or transferred by operation of law or otherwise."

From this it will be seen that, upon Weber's refusal to give his written consent to the assignment of the lease, the plaintiff could obtain no legal right to the possession or occupancy of the building for any purpose or for any length of time, which was a material part of his contract. This constituted a failure of consideration in a material respect which entitled the plaintiff to a rescission of the contract.

■■ Under this contract, the plaintiff was to acquire not only the building, the fixtures and the stock of goods but also to acquire for the remainder of the term and for three years thereafter the right to occupy the building for the purpose of transacting therein the business for which it had been erected. Unless the building could be so occupied, it could be of no possible value to the plaintiff and, since the contract was an entire contract and the consideration which the plaintiff was to pay therefor was not apportionable, the consideration failed and entitled the plaintiff to a rescission of the contract and to a return of the moneys paid and of the note given therefor. See 1 Black on Rescission, sec. 158 et seq. Again, as said by the same author in section 208, when performance of a contract by one of the

parties is inherently impossible, or has become impossible in consequence of events occurring after the making of the contract, it is generally the right of the other party to rescind.

From this it follows that, upon Weber's refusal to extend the term of the lease or to permit Bramel to assign the lease for the remainder of the term, as, under the terms of the lease, Weber had a lawful right to do, this constituted such a material breach of the contract upon Bramel's part as to entitle the plaintiff to a rescission of the contract and to a return of the moneys paid and of the note given by him in reliance upon Bramel's promise to perform.

This conforms to the decree entered in the court below. The decree, therefore, is affirmed.

BEAN, C. J., and KELLY and BAILEY, JJ., concur.