Argued May 18, affirmed June 2, 1960

CAMERON ET UX *v.* STRONG ET UX

352 P. 2d 560

*Charles W. Creighton, Jr.,* Salem, argued the cause for appellants. With him on the brief was Bruce J. Manley, Medford.

*Robert A. Boyer,* Medford, argued the cause for respondents. With him on the brief was Alan B. Holmes, Medford.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Holman, Justices.

ROSSMAN, J.

This is an appeal by the defendants from a decree of the circuit court which granted strict foreclosure of a land sales contract. October 17, 1955, the plaintiffs, William J. and Hazel V. Cameron, husband and wife, as vendors, executed the contract with the defendants, Ruben R. and Ruth E. Strong, likewise husband and wife, as purchasers. The contract fixed the purchase price at $9,000 of which $5,000 was paid at once and the remainder was rendered payable in monthly installments of $50, beginning December 15, 1955. Time was stated to be of the essence of the

contract. The purchasers were required to pay taxes on the property and also a reasonable attorney's fee in the event of foreclosure.

The defendants, in addition to the $5,000 down payment, made the required $50 monthly payments through August 1956. About this time they suffered financial reverses which resulted in bankruptcy proceedings that were filed after the foreclosure action was begun. From September 1956 until the time of the trial defendants made no further contract payments and likewise neglected the payment of the taxes. Their efforts to refinance the property failed. A bill for strict foreclosure was filed August 19, 1957.

The defense to this action was a counterclaim for rescission based on charges of fraudulent representation and concealments. After a trial of the issues submitted by the counterclaim the court found against the defendants on all issues and granted foreclosure.

The subject matter of the land sale contract is a house and 1½ acre lot. The plaintiffs had purchased the property from a Mr. and Mrs. Tilley in 1953 at which time the house was in a semi finished condition. Mr. Cameron was an experienced builder and Mrs. Cameron testified to her own interest and experience in carpentry work. The Camerons added to the house and did the finishing work upon it. They testified that they intended to make it a permanent home for themselves. At the time of the trial Mr. Cameron was 70 years of age and Mrs. Cameron was 64.

According to Mrs. Cameron, the plaintiffs' poor health prompted a decision to sell the property. The Strongs learned from a tenant of the Camerons that their home was for sale and visited the property early in October 1955. They inspected the premises four times before making an earnest money payment. The

defendants concede that plaintiffs put no obstacles in their way and that they were free to make whatever investigations they deemed necessary to a determination to buy or not to buy.

The defendants contend that at these preliminary meetings Mr. Cameron misrepresented the condition of the premises to Mr. Strong in several particulars. The misrepresentations, if any, were oral, and the defendants' evidence was controverted by the plaintiffs who stoutly denied that any representations whatever were made.

For the purposes of this appeal we may assume, without deciding, that the claimed misrepresentations were of material facts which could not readily be tested by an inspection of the premises. The defendants introduced evidence which tended to show that they had made a bad bargain: that the house was shoddily built, the foundation inadequate, the roof bad, the wiring and plumbing substandard, the well easily pumped dry. According to the defendants, the Camerons made positive representations that each of these features of the house was adequate or more than adequate. They claim also that Cameron stated he built the house himself, and that he misrepresented the size of the lot as containing two acres.

In a memorandum opinion the trial court held that "the defendants have failed to establish the alleged misrepresentations by a preponderance of the evidence" and that "by their conduct the defendants have waived and ratified the contract." The court noted that the "evidence falls short" of establishing that plaintiffs had made any representations in regard to a majority of the items claimed by the defendants. On the issue of fraudulent concealment it noted that the plaintiffs were probably themselves unaware, as

they testified, of many shortcomings in the construction since the house was partly completed when they bought it. In formal findings of fact the trial court ruled that no misrepresentations were made and that there were no fraudulent concealments.

■ At this point we need not determine whether the representations or concealments, if made, presented legal cause for rescission. If the defendants are entitled to rescind at all, it is only because they have proved their case by a preponderance of the evidence. Whether any misrepresentations or fraudulent concealments were made by the Camerons is a question of fact and can be answered only by determining what weight is to be attached to the testimony of interested witnesses. The Strongs testified that misrepresentations were made; the Camerons denied making them. While this is an equity case and must therefore be tried de novo on appeal, we are not disposed to disturb the findings of the trial judge where the facts are in dispute, and the resolution of conflicting claims is possible only by weighing the credibility of opposed witnesses whose testimony appears equally worthy of credit from anything that appears in the record before this court. *Brennan v. Growdon,* 106 Or 377, 212 P 189 (1923); *Shores v. Hollister,* 111 Or 330, 223 P 741, 224 P 830 (1924); *Wikstrom v. Davis,* 211 Or 254, 315 P2d 597 (1957).

■■ There is nothing in the record which would justify a reversal of the trial court. On the contrary, it is obvious that the counterclaim for rescission is simply a remedy of desperation called forth by the foreclosure action. Some of the many claimed defects were apparent in 1956, and Strong testified that he visited an attorney, Roy Edwards, in August of that year to learn what could be done. Nothing came of this

meeting and it is clear that Strong later made efforts to refinance the property and pay off the contract. The trial court was of the opinion that this amounted to a waiver. It was at least a waiver of the right to rescind for those defects which were known to the defendants at the time the effort to pay the contract was made. *Gamble v. Beahm,* 198 Or 537, 257 P2d 882 (1953); *Union Savings & Loan Ass'n v. Getty,* 135 Or 565, 296 P 878 (1931). We observe that in the bankruptcy proceeding which was instituted after this suit was filed Strong listed this property as worth $9,000 and asked that it be set aside to him as a homestead.

The only "disinterested" witnesses were two former renters from the Camerons, both of whom had been ordered out for nonpayment of rent. Each of them was present at a conversation between Cameron and Strong and both agreed that Cameron had represented the roof as a "new" or "guaranteed" roof and the well as a "good" well. It is significant that they failed to recollect that any other representations were made. What was said about the roof and the well amounted, as these witnesses remember the conversations, to nothing more than "seller's talk" which the purchasers had a duty to disregard. And if the language can be construed as a representation, it is clear from the evidence that any defects in the roof and well became known to the Strongs at an early date, and they must be held to have waived any right to rescind on account of them.

The only remaining point that deserves consideration on this appeal is defendants' assignment of error relating to the fixing of attorney's fees. The plaintiffs, in their complaint, asked for the sum of $750 as a reasonable fee, and also included a general prayer for

"such other and further relief as to the court may seem equitable." At the close of the trial both parties stipulated that the attorney's fee should be fixed by the court without introduction of evidence. The court thereupon assessed the amount at $945. Defendants claim that it was error to fix a fee larger than that asked for in the complaint and larger than that recommended by the Oregon State Bar's schedule of minimum fees.

■ In assessing the attorney's fee, the trial court was bound only by a standard of reasonableness, and not by the minimum fee schedule of the Oregon State Bar. Defendants' argument that the amount awarded is larger than that recommended by the schedule is based on a theory that the fee should be calculated on a percentage of the unpaid balance of the land sale contract and not on the gross contract price. We do not think it is proper to construe the fee schedule here. Nor do we think the defendants, if they had not stipulated to waive testimony, would have introduced evidence proving that the award made was so high as to be unreasonable. We have a duty to re-examine the award of attorney's fees afresh in this court, as with all other findings in an equity appeal. In our opinion, the record justified an award of $945.

The decree is affirmed.