Argued November 8, reversed and remanded December 31, 1962

MILLER ET UX *v.* BARKER ET UX

377 P. 2d 343

*William B. Wyllie,* Salem, argued the cause for appellants. With him on the briefs were Rhoten, Rhoten & Speerstra, Salem.

*Edward L. Clark, Jr.,* Salem, argued the cause for respondents. With him on the brief were Goodenough, Clark & Marsh, Salem.

Before McALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

WARNER, J.

Millers, as plaintiffs-vendees, bring this suit for a rescission of a contract to buy a motel and furnishings, situated at Detroit, Oregon, and for restitution of money paid. From a decree of rescission and judgment for $11,755.23, Barkers, as defendants-vendors, appeal.

Plaintiff Donald G. Miller is a man 35 years of age, who was a factory worker until 1954. After that year he worked in the Los Angeles area as a carpenter and became a licensed contractor for two years. In 1960 he came to Salem with his wife. Two days after arrival, on July 28, 1960, they went to Detroit to examine the Barker motel, which they learned about through an advertisement which they had seen in California. Mr. Barker showed Mr. Miller the general layout and Mrs. Barker showed him briefly two or three rooms. Miller observed that the place was good looking and neatly kept.

The following day the parties met at the office of Barker's then attorney, in Salem, and executed an earnest money receipt for a purchase price of $48,000, of which $4,000 was to be paid in cash and $6,500 upon the sale of Miller's house in Los Angeles. Millers paid $1,000 at the time of signing the receipt.

In due course a contract was executed by the parties and the stipulated cash down payments were made.

As stated in the contract, the balance was to be paid at the rate of $400 per month, plus accrued interest, for the months of September, October and the months of March to September. For the four months of November to February, inclusive, the principal payments were reduced to $200 per month.

Millers went into possession and started operating the motel on August 14, 1960.

About November 18, 1960, Miller experienced difficulty in making the required payments and Barker agreed to an extension of time to September, 1961, for the payments due in the months of December, 1960, and for the months of January, February and March, 1961, with a proviso that interest would be paid each month, as provided in the contract.

On May 12, 1961, plaintiffs contacted an attorney with reference to the instant matter and a few days before May 26, 1961, for the first and only time, plaintiffs protested to defendants the misrepresentations which they presently rely upon. On the date last mentioned and acting on the advice of their counsel, the Millers returned to the Barkers the keys to the motel and informed them they were rescinding the contract and abandoning the motel. Defendants thereafter immediately went into possession of the motel property and have operated the same ever since. Millers filed their complaint in this suit on May 31, 1961. This was five days after their declaration of rescission and delivery of keys to the Barkers. But before doing so, they collected rents currently due from their motel operation.

In their complaint the Millers allege that the Barkers were guilty of four different misrepresentations which entitle them to rescind. However, in their brief they confine their argument to two: the alleged mis-

representation as to the motel's income and the claim of a misrepresentation respecting the condition and repair of the buildings; namely, the rot found under the floors of certain units.

The defendants, on July 20, 1961, filed an answer in general denial with a further and separate answer seeking to foreclose the contract. Plaintiffs made reply alleging that the defendants had acquiesced and agreed to plaintiffs' notification of rescission given on May 26 by immediately going into possession of the motel and thereafter operating the same.

Before giving attention to the sufficiency of the misrepresentations claimed by plaintiffs in support for their rescission, we will first dispose of their motion for a dismissal of defendants' appeal and then their contention respecting defendants' acquiescence in plaintiffs' rescission as disclosed by their reply.

Sometime prior to oral argument in this matter, plaintiffs filed a motion to dismiss defendants' appeal. The motion was grounded on the representation that defendants had evidenced an intent to accept and accede to the terms of the decree. The motion to dismiss was then denied with leave to renew at the time of presenting plaintiffs' argument on the merits, and this plaintiffs elected to do.

The Barkers were living across the street from the motel when it was abandoned by the Millers in May, 1961.

Plaintiffs argue that the possession and operation of the motel by the Barkers evidences an acceptance of the decree and that the appeal should be dismissed on the authority of *Kellogg v. Smith,* 70 Or 449, 142 P 330 (1914), and *Lange v. Devlin,* 80 Or 238, 156 P 260 (1916).

The *Kellogg* and *Lange* cases are distinguishable from the case at bar. In both, the vendors were defendants in suits to rescind contracts. But in those cases the vendor's objectionable "dealing" with the property occurred *after the trial court had entered a decree of rescission* and while an appeal was pending. Both cases used substantially the following language:

"* * * it is apparent that the defendant used and dealt with the mortgaged property as though he then intended freely to accept and accede to the terms of the decree rendered herein, and, such being the case, he will not be permitted now to change the position which he voluntarily assumed, and is estopped from asserting a different attitude * * *." (*Kellogg v. Smith,* supra, at 456, and see *Lange v. Devlin,* supra, at 239.)

Here, the defendants Barker resumed possession of the motel *before the decree was rendered* by the trial court. That this is a distinction which removes the present case from the early strict rule of *Kellogg* and *Lange* is recognized in the later cases of *Fluhrer v. Bramel,* 158 Or 694, 72 P2d 47, 73 P2d 265, 77 P2d 824 (1938); and *Lewis v. Shook,* 182 Or 483, 188 P2d 148 (1947).

*Fluhrer* was an action for rescission of a contract for the sale of a service station. The vendor appealed from a decree in favor of the plaintiff-vendee. The plaintiff moved to dismiss the appeal for the reason that the defendant had acquiesced in the decree in that he had leased the service station to a third party. The court dismissed the appeal on the authority of the *Lange* case, supra. However, upon petition for rehearing, the court said:

"* * * it is shown that the lease from [the vendor] W. E. Bramel to [the third party] * * *

was made before the decree of the lower court was rendered in the above entitled case. For this reason the order dismissing the appeal taken by Bramel \* \* \* will be set aside." (158 Or 694, 699-700)

*Lewis v. Shook,* supra, is even more nearly in point. In that case Lee contracted to sell some property of Shook, who then contracted to sell part of the property to one Lewis. Lewis took possession and then, desiring to rescind, and fearing that continued possession might stand in his way, quit possession, whereupon Shook resumed possession. Lewis brought an action for declaration of rights under the contracts for the sale of land, and Shook appealed from the judgment. Lewis moved to dismiss the appeal, one of his grounds being Shook's act of taking possession and using the premises. This court disposed of plaintiff's contention as follows:

"The record is clear that appellants' possession of the premises involved commenced prior to the rendition of the decree and, for that reason, does not constitute an acquiescence in the decree. *Fluhrer v. Bramel* \* \* \*." (*Lewis v. Shook,* supra (182 Or at 491))

■■ It, therefore, appears clear that when a vendee voluntarily quits the premises and the vendor resumes possession prior to the rendition of a decree of rescission in favor of the vendee, the vendor's resumption of possession does not in itself evidence such an acceptance of the decree as will prejudice the vendor's right to appeal from the decree.

Plaintiffs in their brief affirm defendants' right to act in any limited and reasonable way to protect the property. Our knowledge concerning defendant's activities subsequent to the entry of the decree is, however, limited to what is stated in the affidavit

given in support of the motion. The activities of the defendants as therein revealed appeal to us as consistent with what is reasonable for the protection and maintenance of property of its kind and uses. Moreover, there is no suggestion in the record that the Barkers at any time entered into any agreements with third parties concerning the property before or after the entry of the decree, as did the vendors in the cases above mentioned. Nor is there any evidence to show how or to what extent, if any, the Millers would be damaged, or even inconvenienced, by the repairs and slight changes made by the Barkers if they had redeemed the property or resumed possession. *Morrison v. Kandler,* 215 Or 489, 505, 334 P2d 459 (1959).

The motion to dismiss the appeal is denied.

■■■ We now address ourselves to plaintiff's contention that the Barkers acquiesced in Miller's acts of rescission and which, if true, would preclude the Barkers from the right to foreclose the contract or declare a forfeiture thereunder.

The contention respecting the acquiescence of the Barkers is predicated solely upon Miller's declaration of rescission made at defendants' home May 26, 1961, and the fact that Barkers thereafter took possession of the motel and continued to operate it. From that, and that alone, the Millers attempt to glean an implied acceptance or acquiescence in plaintiff's offer to rescind. We add: a part of Millers' notice of rescission at that time included advice that he had an attorney and Barker "would be hearing from him." And the Barkers did, for five days thereafter the Millers filed their complaint in the instant matter.

Plaintiffs place reliance on two recent decisions of this court: *Morrison v. Kandler,* 215 Or 489, 334

P2d 459 (1959), and *Nygaard v. Anderson,* 229 Or 323, 366 P2d 899 (1961).

In both cases suits were brought by a vendor for strict foreclosure, and in both cases, shortly after each suit was filed, the vendees voluntarily vacated the premises, and the vendors thereupon resumed possession. The court in the Nygaard case (at 329) declared the sole issue to be: "whether plaintiffs' taking possession of the premises was wrongful and, therefore, constituted a repudiation of the contract entitling defendant to 'rescind.'" The court found that the vendors' act of resuming possession did not amount to a repudiation of the contract, saying:

"* * * the resumption of possession of the premises by vendor does not ipso facto constitute a forefeiture of the contract. *Morrison et al v. Kandler et ux,* 215 Or 489, 334 P2d 459 (1959) teaches us that the vendor's resumption of possession after filing a suit for strict foreclosure may, in the proper case, be consistent with his intent to affirm the contract until the decree of foreclosure is entered. The court said:

"'* * * In determining whether the vendors repudiated the contract after they resumed possession, the test is whether their conduct evinced an intention to no longer be bound by the contract.' Id. at 508, 334 P2d at 467.

The court held that the vendors' repossession under the circumstances was not a repudiation of the contract." (229 Or at 329-330)

The Washington court held in a case similar in many respects to the one at bar:

"* * * where the vendee has abandoned the property, such acts on the part of the vendor, under a contract containing a forfeiture clause, and of which time is the essence, are not sufficient to consummate a mutual rescission. Rafferty v.

Gaston, 118 Wash. 689, 204 P. 595, 596. * * *"
(*Roethemeyer v. Milton,* 187 Wash 582, 60 P2d 694, 696 (1936)).

See, also, 91 CJS 1087, Vendor & Purchaser § 140c; *Hart v. Stickney,* 41 Wis 630, 637, 22 Am Rep 728 (1877), where the court said: "that * * * the mere act of taking possession by the vendor would operate to rescind the contract and discharge all obligations, is a proposition which we think cannot be maintained * * *"; *Nelson v. Hoff,* 70 Idaho 354, 218 P2d 345, 349 (1950); *Dooley v. Stillson,* 46 RI 332, 128 A 217, 219, 52 ALR 1505 (1925), and cases cited therein; *Lake v. Bernstein,* 215 Iowa 777, 246 NW 790, 793-794, 102 ALR 846 (1933); *Sanders v. Brock,* 230 Pa 609, 79 A 772, 774, 35 LRA (NS) 532 (1911): "It would be an alarming doctrine to hold that the plaintiffs [vendees] might violate the contract; and, because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received. Every man who makes a bad bargain, and has advanced money upon it, would have the same right to recover it back that the plaintiffs [vendees] have. * * *"

If the plaintiffs' attempt at rescission was wrongful, the plaintiffs were the ones who repudiated the contract and voluntarily surrendered the property. If a purchaser repudiates the contract without cause, or attempts to do so after he has lost his right by undue delay, as we hereinafter hold that the Millers did, and surrenders the property, a vendor, who has resumed possession and elected to sue for foreclosure, is given a reasonable latitude in operating the property pending the final determination of the suit. *Morrison v. Kandler,* supra (215 Or at 506); *Nygaard v. Anderson,* supra (229 Or at 329-330).

In determining whether the Barkers repudiated the contract after they resumed possession, the test is whether their conduct evinced an intention to no longer be bound by the contract. *Morrison v. Kandler,* supra, at 508; *Nygaard v. Anderson,* supra, at 330. Here, our task is made less difficult than in the *Nygaard* case because the plaintiffs rely solely upon the fact of Barkers' repossession and operation, which we have noticed does not in and of itself constitute a forfeiture of the contract on their part. Moreover, they were informed by Miller on the day of his departure that the Barkers would hear from his attorney, a statement tantamount under the circumstances that his oral claim of rescission would be resolved into a subsequent suit, as it was five days later, and wherein the Barkers by their answer sought a foreclosure of the Miller interest.

There is no evidence here, nor claim made by plaintiffs, that the occupation and operation of the motel after May 25, 1961, was in any way inconsistent with their right to foreclose or which in any way infringed upon or prejudiced the rights of plaintiffs or barred their right to hold possession during the pendency of the instant litigation. See *Morrison v. Kandler,* supra (215 Or at 505).

Assuming that the various misrepresentations were made by the Barkers as alleged by plaintiffs, it is our conclusion that the plaintiffs have forfeited their right to rescind by (a) their delay for an unreasonable length of time after acquiring knowledge of the vendors' misrepresentations and (b) after the acquisition of such information, by conduct affirming the transaction.

It was the testimony of Mr. Miller that their first knowledge of some rot was in the under support of

the floors of two motel units and was attained about November 1, 1960. Sometime before November 18, 1960, they found they were having difficulty making their payments under the contract. On that date they importuned the Barkers for an extension of time to make current and future payments. This request, as we have earlier noticed, was granted. Thus, between about November 1 and November 18, and within approximately three months after going into possession, facts developed which informed the plaintiffs that there was a rot problem and that the motel would not produce the income as allegedly represented by the vendors.

In spite of these facts and later discoveries of rot under the floors and lower income than expected, the plaintiffs did not make any complaints to the Barkers until three or four days before giving the vendors notice of their intention to vacate and rescind, or approximately six months thereafter.

The time and circumstances which first brought the alleged misrepresentations of the defendants to notice render it appropriate to again cite the governing rule as first stated in this jurisdiction by Mr. Justice ROBERT S. BEAN in *Scott v. Walton,* 32 Or 460, 52 P 180 (1898), and thereafter frequently cited. It is found at 464:

> "A party who has been induced to enter into a contract by fraud, has, upon its discovery, an election of remedies. He may either affirm the contract, and sue for damages, or disaffirm it, and be reinstated in the position in which he was before it was consummated. These remedies, however, are not concurrent, but wholly inconsistent. The adoption of one is the exclusion of the other. If he desires to rescind, he must act promptly, and return or offer to return what he has received

under the contract. He cannot retain the fruits of the contract awaiting future developments to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part, and especially his remaining in possession of the property received by him under the contract, and dealing with it as his own, will be evidence of his intention to abide by the contract: *Schiffer v. Dietz,* 83 N.Y. 300; *Parmlee v. Adolph,* 28 Ohio St. 10; *Williamson v. New Jersey S. R. R. Co.,* 29 N. J. Eq. 311; *Wicks v. Smith,* 21 Kan. 412 (30 Am. Rep. 433); *Marston v. Simpson,* 54 Cal. 189."

A corollary to the foregoing rule is that:

"Any action on the part of the purchaser treating an executory contract as in force, when done with the knowledge of facts creating a right to rescind, amounts to a waiver of the right to rescind because of the existence of such facts:  *  *  *." (*Union Sav. & Loan Assn. v. Getty,* 135 Or 565, 569, 296 P 878 (1931)).

The course of conduct which the plaintiffs followed after their first knowledge in November of defendants' alleged misrepresentations, in addition to the modification of the contract negotiated November 18 and referred to above, confirms that they come within the ambit of the rules laid down in the *Scott* and *Union Sav. & Loan Assn.* cases.

Notwithstanding the finding of further evidence of rot in December, 1960, and again the following February and the latter part of March or early April, Miller testified he had decided to keep his bargain, hoping the motel business would pick up in the spring.

On March 22, 1961, Mr. Miller listed the motel property for sale at a selling price of $55,000, wherein he represented the property to be in good condition "inside and out" and told the realtor that the receipts

for the past 12 months exceeded $8,000. He gave as his reason for selling that he had other interests.

Having obtained knowledge of the various matters upon which the plaintiffs predicate their right to rescission long before the listing made in March, they are entitled to the same condemnation which the court applied to the vendee Belanger in *Belanger v. Howard,* 166 Or 408, 112 P2d 1022 (1941). After noting that the plaintiff in that case had made several attempts to sell the property and in a newspaper advertisement had made a recital of details respecting it which corresponded to the very alleged misrepresentations which Belanger later employed in his complaint for rescission, the court observed at 418:

> "* * * He came to a court of equity claiming that he had been victimized. Nothing less than frankness should have been manifested by him. In his efforts to prove that he had been defrauded he should not have come forth as a willing perpetrator of fraud upon others. * * * By his own conduct the plaintiff so discredited himself that we are unwilling to believe his charges of fraud."

Here, Mr. Miller in the real estate listing and by his advice to the realtor extended himself beyond the alleged misrepresentations of defendants. While Millers' course in this particular is not conclusive evidence of a waiver of vendees' right to rescind or their intention to abide by the contract (*Schuler v. Humphrey,* 198 Or 458, 480, 257 P2d 865 (1953)), we deem it very persuasive under the circumstances present in the instant matter and embrace it as a serious challenge to the credibility of his testimony.

■ By their negotiation for the extension of time for payments required by the purchase contract and consummated November 18, 1960, plaintiffs brought

themselves within the boundaries of another familiar rule, well stated in *Conzelmann v. N. W. P. & D. Prod. Co.,* 190 Or 332, 225 P2d 757 (1950), where we said at 354:

> "* * * when one who has been induced by fraud to enter into a contract, subsequently, with knowledge of the fraud, enters into another agreement respecting the same transaction with the one guilty of the fraud, he, the injured party, thereby waives and relinquishes all right to damages on account of such fraud. * * *"

Although plaintiffs were in default in making the monthly payments required by the contract, they continued to make some payments from time to time and as late as April 26, 1961, gave the Barkers their check for $181.50. This is evidence of an affirmance of the contract. *Cameron v. Strong,* 222 Or 250, 254, 352 P2d 560 (1960); *Union Sav. & Loan Assn. v. Getty,* supra (135 Or at 569).

We also note as evidence of their continuing satisfaction with their bargain, the Millers, on April 15, 1961, entered into a contract to purchase from the Barkers for $13,000 a trailer court adjacent to the motel and operable in conjunction with it. Mr. Miller testified that at that time he was ready and willing to complete his contract for the motel and three days later purchased an additional year's insurance on the motel in the amount of $210.29.

These and other matters not alluded to confirm our opinion that the Millers not only forfeited their right to rescind by delay, but also by their various acts confirmed the contract after they became cognizant of the misrepresentations of which they complain.

The decree of the circuit court is reversed and the suit remanded for further proceedings not inconsistent herewith.