Argued and submitted May 18, reversed and remanded July 6, reconsideration denied September 16, petition for review denied October 25, 1983 (295 Or 840)

PORRAS et al,
*Appellants,*

*v.*

BASS,
*Respondent.*

(81-2722-NJ-3; CA A25963)

665 P2d 1249

Steven P. Pickens, Medford, argued the cause and filed the brief for appellants.

Douglas P. Cushing, Medford, argued the cause for respondent. With him on the brief was Cushing & Haberlach, Medford.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This is a suit to foreclose a land sale contract. Plaintiffs (sellers) appeal from a decree granting defendant (buyer) rescission under his counterclaim. We review *de novo* and find that plaintiffs were entitled to a decree of foreclosure and that the trial court improperly allowed defendant to rescind the contract.

The parties were involved in an exchange of properties. Defendant was the owner of Gabby's Tap tavern, which he sold to plaintiffs for $10,000 in cash and $15,000 credit toward the purchase of plaintiffs' Shady Grove property, consisting of a small lot and a house trailer. The Shady Grove property is the subject of this litigation. There is no contention that defendant is not in default. No payments were ever made under the contract of sale. The only real fight in this case is whether defendant is entitled to rescission because of plaintiffs' alleged misrepresentations respecting the water supply on the property.

The contract was executed on February 15, 1981. Defendant had purchased the property for resale, and soon after he moved on it in March, 1981, he put it on the market. On May 2, 1981, he entered a 90-day listing agreement with a real estate agent. In June, a potential buyer made an offer to purchase. Defendant claims that at that time he discovered the misrepresentation that is the basis for his counterclaim for rescission. He contends that plaintiffs had represented that "the property had an existing water supply from a domestic well located on property adjoining." In fact, as the real estate agent learned when she attempted to secure an easement "from that well," the water was actually pumped, without treatment, from the Rogue River. The agent told defendant and the potential buyer of her discovery. The buyer offered to go through with the purchase if defendant, *inter alia,* would install a water system, and defendant agreed. Plaintiffs thereafter told the agent that the contract of sale could not be assumed, as the buyer wanted, because they were foreclosing. After defendant's listing agreement expired on August 3, 1981, he relisted the property for sale with the same agent.

On August 7, 1981, nearly six months after the execution of the contract, plaintiffs filed this foreclosure suit. Approximately five weeks later, defendant filed his answer and

counterclaim. Defendant continued to maintain possession and control of the property, although he physically moved from there in September, 1981. At trial, Mr. Porras testified that he was unaware of any complaints regarding the water supply until after the lawsuit had been filed. He stated that, before the contract was executed, he had advised defendant of the source of the water and that drinking and coffee-making water had to be hauled in.

In its memorandum opinion, the trial court, after noting that the witnesses on "[b]oth sides testified unequivocally and with certainty" on the questions whether and what representations were made, concluded that "defendant had the impression that the property was served by a well." The court further stated:

> "The principal reason for the Court's conviction on that point is not defendant's testimony about the statements attributed to plaintiffs nor those of defendant's witnesses who claimed to have heard such representation but from the fact that defendant's mother testified that she lived there with him through the Summer following the purchase and that during that Summer and up until the time the real estate agent reported to them that the property was served by river water not well water, she and her son used the water for drinking and other domestic purposes. The Court is of the opinion that defendant's mother was a reliable and truthful witness and, accordingly, finds that defendant believed that the property was served by a well."

The trial court granted rescission to defendant. Plaintiffs argue that the trial court erred in granting rescission and point out that defendant (1) inspected the property before the purchase, (2) signed the contract with "the representations clause," (3) was represented by an attorney in the sale, (4) treated the property as his own from March, 1981, until July, 1982, and (5) has "never paid a cent toward the required payments under the contract."

We need not decide whether the alleged misrepresentation was made or whether, if made, it would support defendant's claim for rescission. Even assuming that the trial court was correct in concluding that there was a misrepresentation, defendant cannot prevail in this case, because he played too much of a waiting game. The vital inquiry here is not whether there was a misrepresentation but whether, once he became

aware of the facts, defendant, by his words or conduct, disaffirmed the contract in such a manner as to justify a decree of rescission.

■        The applicable law is long standing and clear. A party seeking relief by rescission must *promptly* disaffirm the transaction upon discovery of the facts giving rise to the right to cancel. Any delay, especially the continued possession of the subject property, while he deals with it as his own, will evidence his intention to ratify the transaction. *Miller v. Barker,* 233 Or 113, 123, 377 P2d 343 (1962); *Housley v. Linnton Plywood Assn.,* 210 Or 520, 529, 311 P2d 432 (1957); *Scott v. Walton,* 32 Or 460, 464, 52 P 180 (1898).

■        Here, the time from possession to the foreclosure suit was approximately *six* months; the time from the discovery of the misrepresentation to the demand for rescission was approximately *three* months. Defendant's continuing possession and efforts to sell the property after he discovered that there was no well and before attempting to rescind constitute conduct inconsistent with an intent to disaffirm the contract. *See Edwards v. Wilcoxen,* 278 Or 91, 562 P2d 1207 (1977); *Miller v. Barker, supra; cf. Bodenhamer v. Patterson,* 278 Or 367, 563 P2d 1212 (1977) (after purchasers found well to be dry, they stopped all work on the property, left the property, made no payments on the contract, sought assistance from the real estate commissioner and sought legal advice). A party cannot retain the fruits of the contract while awaiting future developments to determine whether it will be more profitable to affirm or disaffirm. *Scott v. Walton, supra,* 32 Or at 464.

Reversed and remanded.