Argued and submitted October 29, 1993, reversed on appeal and affirmed on cross-appeal February 2, petition for review denied April 12, 1994 (318 Or 661)

Douglas W. POWELL,
*Respondent - Cross-Appellant,*

*v.*

Daniel W. GOFF,
Daniel W. Goff, P.C.,
Robert J. Smith, Robert J. Smith, P.C.,
all defendants dba Goff & Smith Attorneys at Law,
*Appellants - Cross-Respondents.*

(16-91-07750; CA A76508)

868 P2d 26

Jack L. Kennedy argued the cause for appellants - cross-respondents. With him on the briefs were Todd Van Rysselberghe and Kennedy, King & Zimmer.

Steven G. Marks argued the cause and filed the briefs for respondent - cross-appellant.

Robert K. Udziela, Kathryn Clarke and David Engels filed a brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

Defendants[1] appeal from a judgment that rescinded a contingent fee agreement and addenda, set attorney fees for services provided to plaintiff in an amount that the court determined to be reasonable and awarded restitution to plaintiff for fees that the court concluded defendants had not earned. Plaintiff cross-appeals that portion of the judgment setting defendants' fee for services provided to plaintiff. On *de novo* review, we reverse on the appeal and affirm on the cross-appeal.

These facts are not in dispute. In January, 1982, a snow storm downed several high voltage electrical transmission lines in Lane County. Plaintiff accidentally came into contact with one of those lines and was severely injured. Plaintiff was hospitalized as a result of his injuries and underwent several surgeries. After plaintiff's condition had stabilized, defendant Goff visited him in the hospital.[2] Plaintiff asked Goff and his partner Smith (defendants) to represent him in his claim against the utility company that owned the line that injured him. The parties entered into a contingent fee agreement that called for payment to defendants of one-third of the amount that plaintiff recovered. Plaintiff read and understood the agreement.

During the next several weeks, defendants hired an investigator to interview witnesses and gather facts. They also did legal research, reviewed medical records, hired an economist to develop data on plaintiff's economic losses and performed other work on plaintiff's behalf. Five months after the accident, the utility company expressed an interest in settling plaintiff's claim and made its first offer in December, 1982. After a short series of counteroffers, defendants had two meetings with representatives of the utility company and settled the claim in February, 1983. The settlement consisted of a combination of cash and annuities, less monies that had been advanced by the utility company for plaintiff's medical and related expenses.[3] The settlement's cash value in 1983

---

[1] Defendants are two attorneys and their professional corporations.

[2] Goff had represented plaintiff on another matter before the accident.

[3] The utility company began paying plaintiff's medical expenses within days of his accident, before defendants were retained as counsel.

was approximately $3.2 million. Defendants discussed with plaintiff the amount of the money to be received immediately upon settlement and the projected cash flow of the annuities, if he were to live a normal life span.

In April, 1983, plaintiff and defendants executed an addendum, which purported to clarify the contingent fee agreement. It provided that plaintiff agreed to pay defendants one-third of monies paid to him as received, in lieu of paying them one-third of the then present cash value of the settlement. The addendum explicitly stated that the amount of the annuities would be reduced by one-third, which would be paid as attorney fees. Goff told plaintiff that he should consult with another attorney before signing the addendum. The parties also signed an insurance agreement allowing defendants to be named as beneficiaries of a one million dollar insurance policy on plaintiff's life.[4] Finally, the parties signed escrow instructions that directed the bank to deduct one-third from each annuity payment for payment of attorney fees and to deposit the remaining two-thirds into plaintiff's account.

There is evidence in the record that plaintiff had concerns about the contingent fee agreement in 1982 or 1983. However, he did not seek the advice of independent counsel regarding the contingent fee agreement and the addenda until the spring of 1991. Later that year he commenced this action, asserting several claims for relief, including rescission of the fee agreement and addenda. The trial court rescinded all of the agreements, concluding that they were unconscionable. It set defendants' fee at $1 million and reduced their insurable interest in plaintiff's life to the difference between that fee and the monies already collected. The trial court also granted plaintiff restitution for attorney fees taken from monies advanced by the utility company, concluding that the utility company had agreed to pay for plaintiff's medical and related expenses before he retained defendants.

On appeal, defendants raise numerous assignments of error. We first consider whether plaintiff's rescission claim

---

[4] That agreement was supplemented by another addendum executed in 1984, which assigned plaintiff's interest in a $1 million life insurance policy to an irrevocable trust created for the benefit of defendants.

is barred by the equitable defense of waiver. Waiver is the intentional relinquishment of a known right. *Great American Ins. v. General Ins.*, 257 Or 62, 72, 475 P2d 415 (1970); *State v. Martin*, 94 Or 132, 142, 185 P 236 (1919); *Bank of Eastern Oregon v. Griffith*, 101 Or App 528, 534, 792 P2d 1210 (1990). An intent to waive may be implied from the conduct of a party. *Mitchell v. Hughes*, 80 Or 574, 580, 157 P 965 (1916); *Bank of Eastern Oregon v. Griffith, supra*, 101 Or App at 534. Conduct that may imply an intent to waive includes failure to take prompt action to rescind after a party has knowledge of the facts creating a right to rescind a contract. *See State Farm Fire v. Seiver*, 272 Or 278, 288, 537 P2d 88 (1972); *Union Sav. & Loan Ass'n v. Getty*, 135 Or 565, 569, 296 P 878 (1931).

Although delay alone cannot constitute a waiver of the right to rescind, "most, if not all cases holding an attempted rescission untimely * * * have found conduct inconsistent with an intention to rescind." *Bodenhamer v. Patterson*, 278 Or 367, 375, 563 P2d 1212 (1977). For example, in *Davidson v. Francis Mtr. Car Co.*, 216 Or 480, 338 P2d 658 (1958), a plaintiff claimed that he had rescinded a contract for the purchase of a car. The plaintiff had asked the dealer to make repairs on the car, which it did. Although the plaintiff remained unsatisfied, he drove the car more than 5,000 miles before returning it to the dealer. He then attempted to rescind the contract. The court reversed a verdict in favor of the plaintiff, holding that "[i]t is axiomatic that one cannot continue to assert elements of ownership of the subject matter of the contract and still assert [the] right to rescind." 216 Or at 482.

Similarly, in *Porras v. Bass*, 63 Or App 832, 655 P2d 1249 (1983), we reversed a trial court's decision granting rescission of a land sale contract, based on an alleged misrepresentation, because "the time from possession to the foreclosure suit was approximately *six* months; the time from the discovery of the misrepresentation to the demand for rescission was approximately *three* months." 63 Or App at 836. (Emphasis in original.) We reasoned that the defendant's conduct was inconsistent with an intent to rescind, because he had accepted the benefits of the contract by remaining in possession of the property.

In this case, plaintiff knew that the contingent fee agreement called for payments to defendants of one-third of all monies received in settlement of his claim. When plaintiff's claim settled, Goff and Smith discussed with him its present cash value, the amount of money that he would receive immediately and the projected cash flow of the annuities. In 1983, plaintiff signed an addendum and escrow instructions that provided that defendants would receive one-third of the annuity payments for the remainder of plaintiff's life. Therefore, in 1983, plaintiff knew facts from which he could determine the amount of money defendants would receive under the contingent fee agreement. Plaintiff also knew that his claim had settled in just over one year from the time of his accident, and that defendants did not file a lawsuit on his behalf.

■ Even if those facts would justify rescission on the basis of unconscionability,[5] plaintiff waived his right to rescind by failing to bring this action until 1991. Plaintiff argues that he did not waive his right to rescind, because he first learned that the contingent fee agreement was improper in 1991. He argues that he acted promptly after learning that he had a right to rescind the contract. However, the relevant inquiry is whether plaintiff acted promptly to rescind after obtaining knowledge of the *facts* constituting the grounds for rescission, not whether plaintiff acted promptly to rescind after obtaining knowledge that he could bring a legal action on those grounds. *See Engleking v. Field*, 268 Or 537, 542, 522 P2d 493 (1974). After he had knowledge of all the relevant facts that he alleges gave rise to a right to rescind, plaintiff continued to accept the benefits that he obtained from the work defendants had performed under the contingent fee agreement. Indeed, he waited more than eight years to take action to rescind it. We conclude that plaintiff's claim for rescission is barred by waiver.

■ Next, defendants contend that the court erred in awarding plaintiff restitution for attorney fees taken from

---

[5] Defendants argue that rescission of a contract on the basis of unconscionability is limited to a commercial setting. They also argue that, to justify rescission, the contract must be unconscionable when made, and that plaintiff does not make that assertion. In fact, plaintiff conceded at oral argument that the contract was not unconscionable when made. Because of our disposition of this case, we do not address the merits of those arguments.

monies agreed to be paid before defendants had been retained, arguing that the claim for restitution is also barred by waiver. We agree that plaintiff's conduct implies an intent to waive that claim, just as it did in his claim for rescission. He knew that the utility company had agreed to pay his medical and related expenses before he retained defendants. The contingent fee agreement expressly provided that defendants would receive one-third of all sums received by plaintiff. Plaintiff read and understood that agreement, and knew that defendants, in fact, received a sum equal to one-third of the monies paid in advance of settlement. Assuming, without deciding, that defendants should not have included that sum as part of their fee, plaintiff failed promptly to take action for restitution after he had knowledge of the facts creating a right to restitution. Accordingly, he waived that claim.

Because of our disposition of this case, defendants' remaining arguments do not require discussion, and plaintiff's cross-appeal is moot.

Reversed on appeal; affirmed on cross-appeal.